## CUNNINGHAM vs. T. & G. FREEBORN.

Upon a bill to set aside an assignment, on the ground of fraud, the answer of the defendant denying the fraud, if unreplied to, is conclusive evidence that no fraud exists, unless there are other admissions or statements in the answer inconsistent with such denial.

A general denial of fraud in an assignment of property by a debtor, is not sufficient to sustain the assignment, if it appears upon the face of such assignment that its legal effect must be to defraud the creditors of the assignor.

Where a party intentionally executes an instrument, the legal effect of which must be to defraud a third person, the question whether such instrument is fraudulent is a question of law and not of fact.

It is the fraudulent intent, and not the question of fraud, which by the revised statutes is declared to be a question of fact and not of law.

THIS was an appeal from a decree of the vice chancellor of the first circuit. The complainant was a judgment creditor of the defendant T. Freeborn, and filed his bill to set aside as fraudulent, an assignment of his property made by him to the defendant G. Freeborn. The cause was heard on bill and answer, before the vice chancellor, who decided that the assignment was not fraudulent ; and he dismissed the bill as to the assignee, with costs. The reasons for this decision, as assigned by the vice chancellor, were as follows :

W. T. McCOUN, V. C. The complainant recovered several judgments against Thomas Freeborn, one of the defend-

October 2.

**558**

ants, upon promissory notes, and issued executions which were returned unsatisfied. He then filed his bill in this cause, seeking payment and satisfaction out of property covered by an assignment made by the debtor to his son, George Freeborn, on the 25th of March, 1830, which is alleged to be fraudulent and void. The answers fully deny all the allegations of fraud, but it is nevertheless contended that the assignment as set forth in the answers bears internal evidence of fraud; and this is the question which is now to be examined.

By the revised statutes, the idea of fraud in law as distinct from fraud in fact, was done away; and indeed ever since the decision of the case of *Jackson* v. *Seward*, in the court of errors, (8 *Cowen*, 406,) this doctrine has been exploded. (*See Jackson* v. *Peck*, 4 *Wendell's Rep.* 300.) In all cases arising under the statute against fraudulent conveyances as respects creditors, the question of fraudulent intent is now declared to be a question of fact, and not of law. Hence it is insisted on the part of the defendants, that their answers having expressly denied that the assignment was made with any of the fraudulent views charged in the bill, or in pursuance of any other fraudulent design or intention whatever, and the answers not being replied to, the question is as much at rest as if the alleged fraud had been negatived by the verdict of a jury. There is certainly some consideration due to this argument, yet I cannot admit it to be conclusive. For, notwithstanding the denial of fraud, if it should plainly appear from the face of the instrument, that the acts of the party are inconsistent with his professions of fairness, and that the transaction was clearly intended to hinder and delay his creditors, by placing the property beyond their reach for his future benefit, I should not hesitate to set aside the instrument as fraudulent. I must therefore consider the several objections taken to the assignment in question. The first is, that the assignee, George Freeborn, is not a creditor. It appears from the recitals in the assignment, that the assignee had made and loaned to the assignor sundry promissory notes payable to his order, amounting to $2500, or thereabouts, which notes were outstanding, in the hands of third persons; and that he had also, for the accommodation of the assignor, endorsed another note for $1000, then held by one of the banks. These liabilities

are averred to be a part of the consideration for the assignment, and bona fide in themselves ; and it is one of the trusts declared, that out of the proceeds of the property the assignee shall pay off and discharge those liabilities. Not that he shall receive the amount as a creditor, whether he pays the notes or not ; but that he shall appropriate the funds to the payment of the notes. Thus creating a trust for the benefit of the holders, which they could at any time enforce. This surely must be a valid trust ; there being no question but that these were bona fide debts, which the assignor was bound to pay. The circumstance, therefore, that the assignee was not absolutely a creditor, in my opinion, forms no objection to the validity of the assignment.

The next objection is, that the assignee has not executed the assignment, and has entered into no covenant to perform the trusts. I am not aware of any case where the want of these formalities has been held sufficient to vitiate the transfer, provided it was good in other respects. It is true, if the assignee did not accept or take upon himself the trust, the assignment would be considered a dead letter, or merely colorable. But when the instrument is executed and delivered to and accepted by the assignee, and he takes possession of the property and enters upon the performance of the trusts declared in the deed, as is shown by the answers in the present case, he is as much bound to a faithful performance of his duty as trustee, and to render a just account of the property, as if there were express covenants to that effect. And this is all that the cestui que trusts or the assignor can require.

But it is said that the creditors have not acceded to or become parties to the assignment, and hence that it is void. This renders it necessary to look a little more particularly into the nature and object of the assignment to see whether that formality is required, or whether the instrument is good without it. The property assigned consists of both real and personal estate, principally a large manufacturing establishment and iron foundry ; and the trusts declared are to this effect : The assignee is to use and operate with the property in the manner before pursued in the establishment. He is to sell the manufactured, and work up and sell the unmanufactured

articles as rapidly as the same can conveniently and without heavy sacrifice be done.   And in general, he is to sell and dispose of all the assigned property as soon as the same can conveniently and judiciously be done.   And he is then to pay off and discharge certain notes and endorsements loaned to the assignor, or made for his accommodation, which were then outstanding, being liabilities which the assignor provides for as preferred demands to be paid off in the order mentioned.   And then, after paying the reasonable expenses of executing the trusts, the assignee is to distribute all the rest and residue of the property, or the proceeds thereof, equally among the other creditors according to the amount of their respective debts.   These are the simple provisions of the assignment, which is absolute in its terms, vesting the property in the assignee unconditionally, and giving to the creditors a perfect right to come in and take an equal share in the distribution of the surplus after the preferred debts are satisfied, without requiring a discharge of the debtor, or the performance of any condition precedent or subsequent on the part of the creditors.   The terms of the instrument do not require any assent on their part to make it valid.   The right of property passed and vested in the assignee, and the relation of trustee and cestui que trust, as between the assignee and the creditors, was at once constituted so that the assignor could not recall the deed.   (*Ellison* v. *Ellison*, 6 *Ves.* 656.   *Bunce* v. *Winthrop*, 1 *John. Ch. Rep.* 329.   *Brooks* v. *Marbury*, 11 *Wheaton*, 78.)   The creditors may come in and take their dividends under the assignment without prejudice to the claims upon the assignor personally for any balance.   And this right being left to them they cannot complain, so long as the law tolerates the practice of creating preferences among creditors.   The case of *Garrard* v. *Lord Lauderdale*, (3 *Simon's Rep.* 1,) has been referred to, as containing principles supposed to militate against the validity of this assignment. But it will be perceived, upon examining that case, that it contains nothing at variance with what I have just stated. There the deed purported to be made between the grantor of the first part, the defendants of the second part, and the several persons whose names were mentioned in a schedule as

1832.

Cunningham
v.
Freeborn.

creditors, of the third part. And the creditors not having executed the deed or conformed to its terms, it was held, after the death of the grantor, and when a different disposition had been made of the property, that the deed could not be enforced by the creditors. That decision was made upon the authority of *Walwyn* v. *Coutts*, (3 *Simon's Rep.* 14. 3 *Meriv. Rep.* 707, *S. C.*) There a bill was filed in behalf of creditors under a trust deed, by which the trustees were authorized, if they should think proper, but not otherwise, and at the request of the grantor, to pay such of his debts as they should consider advisable to be paid, &c. And the terms of that deed, which was a voluntary one, having been varied by subsequent deeds, the court refused to interfere to enforce the first. The reasons are obvious. Those deeds never took effect, and no rights had become vested under them. They remained executory; and being without any consideration moving from the creditors, who were not privy to the making of the deeds, they remained subject to alteration or revocation by the grantors. The same principles are to be found in *Page* v. *Broom*, (4 *Russ. Rep.* 6.) Not so however in the present case, as I have already shewn; because, here the deed took effect. The assignee stood in the relation of a creditor, and as such, a priority existed between the debtor and him, which of itself was a sufficient consideration, and rendered the assignment irrevocable.

Some other objections were made against the validity of this assignment; as that there was no schedule annexed, shewing the particulars of the property assigned, or the names of creditors and the amount of their debts. It has never been held that such an omission was of itself sufficient to avoid an assignment. In some instances, and taken in connection with other circumstances, it might be considered a badge of fraud. In *Burd* v. *Smith*, (4 *Dallas*, 76,) a case very much relied upon by the complainant's counsel, it is mentioned as one of the grounds of the decision that no schedule accompanied or followed the deed of the trust, by which the trustees could know to whom distribution was to be made. But that difficulty is obviated here; as the defendants have set forth a full inventory of the property, and a list of all the

creditors, with the amount due to each, although the same were not annexed to the assignment. And every inference of fraud which could result from the omission is repelled. Another and a principal ingredient of the fraud in the case just adverted to does not exist in the present, viz. a resulting trust to the grantor, in the event of the creditors not accepting their dividend in discharge of their debts within a given time. That has always been held by the courts of our state sufficient to avoid the instrument. And I know of no circumstance short of that, which at the present day is considered ipso facto evidence of fraud, arising from the deed itself. I am satisfied, upon the whole, that there is not enough apparent upon the face of this assignment to justify me in setting it aside as fraudulent. And the facts and circumstances disclosed by the answers of the defendants, which stand admitted as true, taken in connection with the assignment, as respects either the execution of the instrument, or the possession and management of the property under it, are very far from making out a case of fraud in fact. I cannot therefore interfere with the assignment upon the ground of fraud.

A second point made by the complainant's counsel is, that granting the assignment to be valid as to the preferred creditors, there are sufficient funds left to satisfy the complainant's judgments ; and that by his diligence, he has entitled himself to a preference over the creditors not preferred. It is difficult to perceive, if the assignment is valid for one purpose, why it should not be so for another, which in itself is equally meritorious. If it be competent for a debtor to assign his property for the benefit of a favored and preferred few, in the first instance, why may he not in the next place secure in the same manner an equal distribution of the residue among the creditors at large ? Indeed, a contrary proposition cannot be maintained for one moment ; for it would be absurd to say that the assignment shall not be disturbed to the prejudice of the preferred creditors, and yet that the order of payment as respects those not preferred, and who are to be paid pari passu, shall be broken up, and the provisions of the assignment as to them be destroyed. I must therefore declare that the provisions of the assignment are in no respect to be varied in behalf of this judgment creditor.

*D. Graham & D. Graham, jun.* for the complainant, made the following points:

1. The assignment is void by reason of fraud apparent on its face, and the circumstances disclosed by the answers.

2. But granting the assignment to be valid as to the preferred creditors, the complainant having, by his diligence, secured a priority over the creditors not preferred, is entitled to an account against the assignee.

*John Anthon,* for the defendants, made the following points:

1. The bill charges a fraudulent concealment by the defendants of the property of Thomas Freeborn, an insolvent; and also an assignment of property by Thomas Freeborn to George Freeborn, with a fraudulent intent to evade the payment of judgments obtained by the complainant against Thomas Freeborn.

2. These allegations are expressly denied by the answers; which also set forth an assignment made by Thomas to George, preferring certain creditors, and making an equal division of the remainder of the assignor's property among all his creditors after paying such preferred creditors in full. All fraudulent concealment, and all fraud in the assignment, is fully denied.

3. The cause is heard on the bill and answers, and consequently the answers being entirely responsive to the bill, are admitted to be true. The charge of fraud in fact, which is the only charge in the bill, is therefore disproved.

4. Fraud in law is not charged in the bill; and since the passage of the revised statutes it cannot exist distinct from fraud in fact. And the admission, from the state of the pleadings, of the absence of fraud in fact, is tantamount to the finding of a jury, and is conclusive.

5. If it is competent to the complainant, under the circumstances, to raise the question of fraud in law, that ingredient does not exist in this case.

6. The assignment, if valid, secures to the preferred creditors their preference, and to the general creditors their equal distribution ; and the complainant cannot therefore disturb its

1832.

Cunningham
v.
Freeborn.

arrangements as to either class, but must come in equally with the general creditors.

7. The decree of the vice chancellor establishing the assignment is correct, on all these grounds.

THE CHANCELLOR. As this cause was heard on bill and answer only, the denial of all fraud in the execution of the assignment is conclusive evidence of the fact in favor of the defendants, unless that allegation is inconsistent with or is contradicted by some other statement or admission in the answer. But the vice chancellor was correct in supposing that the general denial of fraud was not sufficient, if it appeared upon the face of the assignment that its legal effect would be to delay, hinder and defraud the complainant, or other creditors of the assignor. The revised statutes have not made the fraud itself a question of fact, in all cases, neither indeed was it possible for the legislature to do so. For when a party has intentionally executed an assignment, or conveyance of his property, which must hinder and defraud his creditors of their just demands, the question whether the conveyance is fraudulent or not, necessarily becomes a question of law and not of fact. The object of the statute was to reach a particular class of cases, where the conveyance would not necessarily have the effect to defraud creditors or others of their rights; and where the question of fraud must of course depend upon the intent with which the conveyance was executed. In all such cases the question of *fraudulent intent* is declared to be a question of fact and not of law. But if a party admits he intended to do a particular act, the legal effect of which act the adverse party supposes to be to delay hinder or defraud him as a creditor, and to be a violation of the statute, the question whether the act complained of is such a fraud as the legislature intended to guard against, necessarily becomes a question of law; and must be decided as such by the court. In the case now under consideration, although the defendants have denied all fraud in the assignment, yet if the assignor has made an assignment in such a form as necessarily to produce the effect which the statute has declared to be a fraud upon his

creditors, the court must declare that assignment fraudulent and void, notwithstanding this general denial in the answer. Upon an examination of this case, however, for the reasons given by the vice chancellor, I am satisfied that there is nothing upon the face of the assignment which shows it to be legally fraudulent. And the answer shows that, in fact, there was no intention to defraud.

The decree of the vice chancellor was also correct in dismissing the bill as against G. Freeborn, the assignee. The assignment being valid, and provision being made therein for the distribution of all the surplus proceeds of the assigned property among the remaining creditors rateably, after paying the debts of those who were preferred, such residuary cestui que trusts had an interest in the surplus, of which they could not be deprived without their consent. If the complainant wished to reach that surplus, he should have filed his bill in behalf of himself and all other creditors who might choose to come in under the decree.(a) In that way those creditors might have been compelled to elect whether to come in and take the benefit of the provision made for them in the assignment, or to let him take the whole, or so much thereof as was necessary to pay his debt and costs. But the present bill is not framed in such a manner as to enable the court to make a decree of that kind, even if there had been a prayer for general relief.

The decree of the vice chancellor must therefore be affirmed, with costs.

(a) See *Egberts* v. *Wood*, ante p. 517.