1832.

CUNNINGHAM
v.
FREEBORN.

## CUNNINGHAM vs. FREEBORN and FREEBORN.(a)

Although there is a general denial of fraud, yet if, upon the face of a trust deed, it appears intended to hinder and delay creditors, the same will be set aside.

A debtor may protect his accommodation endorser and make him his assignee.

An assignee's not having signed and sealed the deed of trust nor entered into a covenant to perform his duty, can be no ground for vitiating the instrument.

When a deed for the benefit of creditors is absolute, vesting the property in a trustee and giving the creditors rights, (after preferences,) the same is valid without the necessity of the creditors signing it.

Although such a deed has no schedules to show the property assigned, nor the names of the creditors nor the amount of debts, yet these omissions are not, of themselves, sufficient to avoid it. In some cases, when taken in connec-

(a) There was an appeal from the decision in this case, and the decree was affirmed by the Chancellor.

tion with circumstances, it might be otherwise. In the present case, all this was obviated by the defendants adding schedules to their answers.

When a debtor, by a valid deed of trust, prefers a few and declares the balance is to go to his other creditors, a judgment creditor, filing his bill after execution, will not, by his diligence, be entitled to payment immediately after the preferred few. He cannot affect the trust.

1832.

CUNNINGHAM
*v.*
FREEBORN.

THE complainant was a judgment creditor of Thomas Freeborn; and after execution had been returned *nulla bona,* he filed his bill. In which, amongst other things, it was alleged, that, with a view to defeat the judgments obtained by the complainant, the defendant, Thomas Freeborn, had collusively and fraudulently entered into an arrangement with his son, George Freeborn, and made and executed to him, without consideration, a pretended deed of assignment of all his property, under the pretence of paying some debt or debts alleged to be due by Thomas Freeborn to George Freeborn, or some other similar pretence; but, in reality, to cover and protect the property of Thomas Freeborn from the executions of the complainant and the claims of his other creditors, and to secure it for the sole or partial benefit of Thomas Freeborn. But, of the time when the deed was executed, or the kind, nature or quality of it, or whether it was executed to more than one pretended assignee, or the avowed purposes for which it had been executed, or the alleged trusts therein specified, or the number, nature and extent of the alleged debts of Thomas Freeborn, or the true nature, quantity and value of the property so pretended to be assigned or owned and retained for his own use and not assigned, the complainant was ignorant and prayed a full discovery; and also prayed that a copy of the said assignment and all other deeds and papers purporting to assign, sell, convey, exchange or incumber the property, since the time of his indebtedness to the complainant commenced, might be annexed to the answers of the defendants.

The defendant, Thomas Freeborn, by his answer, admitted the facts in relation to the complainant's judgments against him; also, his insolvency; and stated the time when he fairly believed he became insolvent. He denied that he entered into

*January* 24, 1832.

*Debtor and Creditor.*
*Trust deed.*

any collusive or fraudulent arrangements with the said George Freeborn or with any other person; or ever, under any fraudulent pretence or with any fraudulent views or intention, made such assignment; that, being insolvent and anxious to protect and prefer certain of his creditors whose demands were of a confidential character, and which he had a right to do, as he was advised by his counsel, he did execute and deliver a certain deed of assignment, upon the consideration apparent on the face of it, of certain of this defendant's property.

The answer then set forth a copy of the assignment, which bore date the twenty-fifth day of March one thousand eight hundred and thirty. It was made between the said Thomas Freeborn of the first part, and the said George Freeborn of the second part. The following recitals were contained in it :—
" Whereas the said party of the first part has borrowed from
" the said party of the second part sundry promissory notes,
" payable to the order of the said party of the first part, amount-
" ing to twenty-five hundred dollars or thereabouts, which
" notes are now held by the Western Insurance Company of
" the village of Buffalo, as believed. And whereas the said
" party of the second part, has also, for the accommodation of
" the said party of the first part, endorsed a note drawn by
" Curtis Hitchcock for the sum of one thousand dollars or
" thereabouts, now held, as is believed, by the Mechanics' Bank
" of the city of New York." The party of the first part then grants certain lots of ground in the city of New York, and also assigns all his foundry apparatus and articles of trade and also a steamboat, (subject to a mortgage) unto the party of the second part: " In trust to use and operate with the first de-
" scribed premises in the manner heretofore pursued in said
" establishment; and to sell the manufactured articles; and to
" work up and sell the unmanufactured articles as rapidly as the
" same can conveniently and without heavy sacrifice be done;
" and, in general, to sell and dispose of all the aforesaid property
" as soon as the same can conveniently and judiciously be done.
" Secondly; in trust, out of the proceeds of said property or
" with part thereof, to pay off and discharge the aforesaid lia-
" bilities. Thirdly; after discharging the above liabilities, in

" trust to pay off and discharge certain notes and endorsements
" loaned to or made for the accommodation of the said party
" of the first part by Gideon Freeborn, by Freeborn and Hitch-
" cock, and by Curtis Hitchcock, to the extent of four thousand
" one hundred dollars and no more, in addition to the note of
" Curtis Hitchcock, endorsed by George Freeborn, hereinbe-
" fore referred to, rateably, in proportion to the responsibility
" of each; provided, however, that a sufficient sum out of this
" third trust is to be applied, unless they otherwise discharge
" the same, to Freeborn and Hitchcock's business-note for
" twelve hundred and fifty dollars, made payable by them to
" the said party of the first part, for property sold them, which
" note had been transferred and is now held by the Mercantile
" Insurance Company of New York. *Fourthly*; in trust, after
" fulfilling the last aforesaid trust, to pay off the notes of Fran-
" cis O'Brien to the extent of two thousand three hundred and
" fifty dollars and no more, loaned by the said O'Brien to the
" said party of the first part. *Fifthly*; after paying the rea-
" sonable expenses of executing the aforesaid trusts, to distribute
" all the rest and residue of the property hereby assigned or the
" proceeds thereof equally among the other creditors of the
" party of the first part, according to the amount of their re-
" spective debts."

The defendant went on to state, that the assignment was not accompanied by any schedule. He added schedules to his answer, setting forth the debts secured by the assignment; the property assigned, and his book accounts and notes; and showed how the assignee had entered upon the trust.

The defendant George Freeborn, by his answer, denied that Thomas Freeborn, with any of the fraudulent views or intentions stated in the bill, entered into any collusive or fraudulent arrangements with this defendant; or ever made any fraudulent assignment to him. But he admitted, that the assignment before referred to was made to him; and he set out a copy of it. He then added, " and this defendant further answering says, that the " debts so secured and preferred by the said assignment are all " just and true and *bona fide* due and owing by the said Thomas " Freeborn to the persons in this behalf in the said assignment

1832.

CUNNINGHAM
*v.*
FREEBORN.

" mentioned; and that it is utterly untrue that the said assign-
" ment was made for any other purpose than for the honest
" and *bona fide* payment thereof." This defendant annexed a
schedule to his answer, containing an inventory of the property
assigned to him. He showed he had taken and acted upon the
trust: and stated his belief that the property had improved in
value in his hands.

The objections taken by the counsel for the complainant to
the deed of assignment sufficiently appear in the opinion of the
court.

Mr. *David Graham* and Mr. *David Graham jr.* for the com-
plainant.

Mr. *John Anthon*, for the defendants.

*April 9.*

THE VICE-CHANCELLOR. This cause has been heard upon
bill and answers.

The complainant recovered several judgments against Tho-
mas Freeborn, one of the defendants, upon promissory notes;
and issued executions, which were returned unsatisfied.

He now files his bill and seeks for payment and satisfaction
out of property covered by an assignment made by his debtor
on the twenty-fifth day of March one thousand eight hundred
and thirty, upon the allegation of its being fraudulent and void.

The answers fully deny all the charges of fraud. But it is,
nevertheless, contended that the assignment, as set forth in the
answers, bears internal evidence of fraud; and this is the ques-
tion which I have to examine.

By the Revised Statutes, and, indeed, ever since the decision
of the Court of Errors in the case of *Jackson* v. *Seward*, 8
*Cowen*, 406, (1826.) the idea of fraud in law as distinct from
fraud in fact is done away: and see also *Jackson* v. *Peck*, 4
*Wend.* 300. In all cases arising under the statute against
fraudulent conveyances, the question of fraudulent intent is now
declared to be a question of fact and not of law; and hence it
is insisted, on the part of the defendants, that their answers
having expressly denied that the assignment was made with

any of the fraudulent views charged in the bill or from any other fraudulent design or intention whatever, and as the answers are not replied to, the question is as much at rest as if the alleged fraud had been negatived by the verdict of a jury.

There is certainly some consideration due to this argument; but yet I cannot admit it to be conclusive: for, notwithstanding there is a denial of fraud, if it should plainly appear upon the face of the instrument, that the acts of the party are inconsistent with his professions of fairness, and that the transaction was intended to hinder and delay his creditors, by placing the property beyond their reach, and for his own future benefit, I should not hesitate to set aside the instrument as fraudulent.

I must, consequently, consider the objections taken to the assignment in question.

The first is, that the assignee, George Freeborn, is not a creditor. It appears, the assignee had made and loaned to the assignor sundry promissory notes payable to his order, amounting to two thousand five hundred dollars or thereabouts, which were outstanding in the hands of third persons, and that he had also, for the accommodation of the assignor, endorsed another note for one thousand dollars, then in the possession of a bank. These liabilities are averred to be a part of the consideration for the assignment and good in themselves, and it is one of the trusts in the assignment that, out of the proceeds of the property, the assignee shall pay off and discharge these liabilities: not, that he shall receive the amount as a creditor; but that he shall appropriate the funds to the payment of the notes: thus creating a trust for the benefit of the holders and which they could at any time enforce. As they were debts arising *bona fide* and which the assignor was bound to pay, this trust is surely good!

As to the next objection—it is this: that the assignee has not executed the assignment nor entered into any covenant to perform the trusts. I am not aware of any case where the want of those formalities have been held sufficient to vitiate the transfer, provided it was made in good faith. It is true, the assignment would be considered a dead letter or merely colorable,

CUNNINGHAM
*v.*
FREEBORN.

if the assignee did not accept of it or take the trusts upon himself: but where the instrument is executed and delivered to and is accepted by the assignee, and he takes possession of the property and enters upon the performance of his trusts, (as it appears by the answers has been done in the present case,) he is as much bound to a faithful performance of his duty and to render a just account of the property as if there were express covenants to that effect ; and this is all the *cestuis que trust* or the assignor can require.

But it is said, the creditors have not acceded to or become parties to the assignment; and, therefore, it is void. This renders it necessary to look a little more particularly into the nature and object of the assignment. The property assigned consists of both real and personal estate, principally a large manufacturing establishment and iron foundry ; and the trusts declared are to this effect: the assignee is "to use and operate " with the property in the manner before pursued in the estab- " lishment, and to sell the manufactured, and work up and sell " the unmanufactured articles as rapidly as the same can conve- " niently be done ; in general to sell and dispose of all the as- " signed property as soon as the same can conveniently and " judiciously be done ;" then (in the second, third and fourth places) to pay off and discharge certain notes and endorsements loaned to or made for the accommodation of the assignor and outstanding, being liabilities which had a preference by the terms of the assignment and were to be paid off in the order mentioned ; and then, which was the fifth provision, after paying the reasonable expenses of executing the trusts, to distribute all the rest and residue of the property or the proceeds thereof equally amongst the other creditors according to the amount of their respective debts.

These are the provisions of the assignment. It is absolute in its terms ; vests the property in the assignee unconditionally ; and gives the creditors a perfect right to come in and take an equal share in the distribution of the surplus, after the preferred debts are satisfied, without requiring a discharge of the debtor or the performance of any condition precedent or subsequent from the creditors. The terms of the instrument do not re-

1832.

CUNNINGHAM
v.
FREEBORN.

quire any assent on their part to make it valid. The right of property passed and vested in the assignee; and the relation of trustee and *cestui que trust*, as between the assignee and the creditors, was at once constituted so that the assignor could not recall the deed: *Ellison* v. *Ellison*, 6 *Ves.* 656; *Bunn* v. *Winthrop*, 1 *J. C. R.* 329; *Brooks* v. *Marbury*, 11 *Wheaton*, 78. The creditors may come in and take their dividends under the assignment, without prejudice to their claims upon the assignor personally for any balance; and this right being left to them, they cannot complain, so long as the law tolerates the practice of preference amongst creditors.

The case of *Garrard* v. *Lord Lauderdale*, 3 *Sim.* 1, has been referred to as containing principles supposed to militate against the validity of this assignment. But it will be perceived, upon an examination of the case, that it contains nothing at variance with what I have just stated. There, the deed purported to be made between the grantor of the first part, the defendants (trustees) of the second part, and the several persons whose names were mentioned in a schedule as creditors, of the third part. The creditors had not executed the deed or conformed to its provisions; and it was held, after the death of the grantor and when a different disposition had been made of the property, that the deed could not be enforced by the creditors. The decision was made upon the authority of *Walwyn* v. *Coutts*, of which a note is given in 3 *Meriv.* 707; and a full statement appears at page 14, 3 *Sim.* In this last mentioned case, a bill was filed in behalf of creditors under a trust deed, by which the trustees were authorized, "if they should think proper, but " not otherwise, and at the request of the grantor, to pay such " of his debts as they should consider advisable to be paid." The deed was a voluntary one; and the terms of it had been varied by subsequent deeds; and the court refused to interfere or to enforce it. The reasons are obvious: the deed never took effect; no rights had become vested under it; they remained executory; and being without any consideration moving from the creditors (who, it appeared, were not privy to the making of the deeds) they remained subject to alteration or revocation by the grantors. The same principles are to be found in *Page* v. *Brown*, 4 *Russ.* 6.

CUNNINGHAM
v.
FREEBORN.

Not so, however, in the present case; because, here the deed took effect and the assignee stood in the relation of a creditor: so that such a privity existed between the debtor and the trustee which was, of itself, a sufficient consideration and enough to render the assignment irrevocable.

Several other objections were made against the validity of the assignment; such as, that there were no schedules annexed to show the particulars of the property assigned, nor the names of the creditors, nor the amount of the debts. Such omissions have never, of themselves, been held sufficient to avoid an assignment. In some instances, and when taken in connection with other circumstances, they might be considered a badge of fraud. Thus in *Burd* v. *Smith*, 4 *Dallas*, 76, a case very much relied upon by the counsel for the complainant, it is mentioned as one of the grounds of the decision, that no schedule accompanied or followed the deed of trust whereby the trustees could know to whom a distribution was to be made. This difficulty is obviated in the present case. Here, the defendants have, although the same was not annexed to the assignment, set forth a full inventory of the property and a list of all the creditors, with the amount due to each. Every inference of fraud which would result from the omission is repelled. Another and principal ingredient in the fraud in the case just adverted to, does not exist in the present, namely, a resulting trust to the grantor in the event of the creditors not accepting their dividend in discharge of their debts within a given time. This has always been held by the courts of our State sufficient to avoid the instrument; and I know of no circumstance short of it which, at the present day, is considered *ipso facto* evidence of fraud arising from the deed itself.

Upon the whole, I am satisfied there is not enough, apparent upon the face of this assignment to justify me in setting it aside as fraudulent; and the facts and circumstances, respecting the execution of the instrument and the possession and management of the property disclosed by the answers of the defendants, (which stand as true,) when taken in connection with the assignment, are very far from making out a case of fraud

in fact. I cannot, consequently, interefere with the assignment upon the ground of fraud.

A second point made by the complainant's counsel is, that granting the assignment to be valid as to the preferred creditors, there are sufficient funds left to satisfy the complainant's judgments, and he, by his diligence, has entitled himself to a preference over the creditors not preferred. It is difficult to perceive why, if the assignment is valid for one purpose, it should not be so for another. If it be competent for a debtor tò assign his property for the benefit of a favored and preferred few in the first instance, why may he not, in the next place, secure an equal distribution of the residue amongst his creditors at large? Indeed, a contrary proposition cannot be maintained for a moment. It would be idle to say, " the assignment " shall not be disturbed to the prejudice of the preferred credi- " tors, but the order of payments as respects those who are not " preferred, who are to take *pari passu*, shall be broken up " and the provisions of the assignment, as to them, be de- " stroyed."

I must declare the provisions of the assignment are to be in no respect varied in behalf of the judgment creditor.

---

Upon the court's giving the above opinion, the counsel for the complainant suggested, there might be property belonging to Thomas Freeborn which was not covered by the assignment. An order of reference to a master was accordingly made, in order to ascertain the fact; and all further directions, as to any equities arising therein and as to costs against Thomas Freeborn, were reserved.

It was decreed that the bill should be dismissed as against the defendant George Freeborn, with costs.