### SOPHRONIA GAGE *vs.* DAUCHY and BEEKMAN.

A wife may confer upon her husband the use or income of her separate property, as a gift; and her acquiescence, or assent to its receipt or use by him, is evidence of a gift by her.

Where a married woman, owning a farm, in her own right, goes into the possession of it with her husband, and occupies it, with him and their family; she permitting him to cultivate the land—but without any agreement as to the rents or produce—and to use the proceeds in the support of herself and family, and to sell, exchange and deal with the crops at his pleasure; she thereby confers on him rights which cannot be withdrawn or repudiated when his creditors seek to collect their demands out of property for which he has exchanged the produce of the farm.

Both at law and in equity property thus purchased by the husband belongs to him, and may be seized by his creditors,

Gage *v.* Dauchy.

THIS action was brought to recover the value of certain personal property to which the plaintiff claimed title under a chattel mortgage executed to her by Phineas L. Goodwin and Angelina A. Goodwin his wife.

The defendant justified the taking and conversion under a judgment and execution against said Phineas L. Goodwin. The issue was tried at the Niagara circuit in February, 1858, before Mr. Justice GROVER, and the plaintiff had a verdict. The facts upon which the question now presented arises, were substantially these: In the year 1855 Angelina F. Goodwin purchased a farm of 65 acres in Hartland, Niagara county, with her separate property, and the same was conveyed to her; and with her said husband, Phineas L. Goodwin, and their family, she moved upon said farm, and they have since resided thereon. The said Phineas has cultivated and carried on the farm, raising divers crops thereon, yearly; and the property in question, or the greater part thereof, was purchased by him by exchanging grain raised on said farm therefor. There was no agreement between Mr. and Mrs. Goodwin to pay him any thing for his services on said farm; nor does it appear that there was any agreement between them in relation to the carrying on of the farm, or the rights and interests of either in the produce. The team used on the farm belonged to Goodwin, and the work of the farm was done by himself and family; except some labor during harvest, for which it appeared Mrs. Goodwin paid in part, and he the residue. It appears from the rulings of the court that the material question became whether Phineas L. Goodwin had any title or interest in the property in question. The court, amongst other things, charged the jury, " that if Mrs. Goodwin owned the farm she was entitled to the crops raised thereon, unless she made some agreement with some other person giving an interest in the crops to another." To this charge the defendants duly excepted. " The court further charged the jury, that if Mrs. Goodwin owned the farm and lived on it with Mr. Goodwin, her husband, and Mr. Goodwin worked upon the farm and be-

stowed his labor in raising the crops upon the farm, he would not acquire any title to the crops, unless there was an agreement made by which he was to have an interest in them or to have the use of the land." And " that if Mrs. Goodwin owned the farm and crops, and purchased or caused to be purchased for her the sleds in controversy, and paid for the same from grain raised on the farm, or her other separate property, in good faith, she would own the sleds, and Mr. Goodwin would have no title in them." To these and several other propositions of the charge, involving similar points, the defendants' counsel duly excepted. The defendants then requested the court to charge, that if the jury believed that the cultivation of the farm was by the consent of the wife, express or implied, carried on by the husband in the absence of any agreement by his wife to compensate the husband for his services, the wife in the usual manner superintending the household, the law would hold the farm to have been cultivated for the benefit of the husband, subject to his duty to account to the wife for the value of the use of the same. The court declined so to charge, and the defendants excepted. The defendants also requested the court to charge that a wife, living and cohabiting with her husband, cannot for her own benefit, and to the exclusion of her husband, carry on the business of farming, and that the carrying on of such business, under such circumstances, although in the name of the wife, the law will hold to be for the benefit of the husband, and he will be entitled to the produce and profits of the business ;" which request the court refused, and the defendants excepted. The defendants also requested the court to charge the jury generally, that the plaintiff was not entitled to recover, which the court refused to do, and the defendants duly excepted. From the judgment entered on the verdict for the plaintiff, the defendants appealed.

*G. D. Lamont,* for the appellants.

*E. Griffin,* for the respondent.

DAVIS, J.  The third section of the act entitled "An act for the more effectual protection of the property of married women," passed April 7, 1848, as amended by chapter 375 of the laws of 1849, is as follows: "Any married female may take by inheritance or by gift, grant, devise or bequest, from any other person than her husband, and hold to her sole and separate use, and convey and devise real and personal property, and any interest or estate therein, and the rents, issues and profits thereof, in the same manner and with the like effect as if she were unmarried ; and the same shall not be subject to the disposal of her husband, nor be liable for his debts."

The farm on which the Goodwins resided was purchased with money belonging to Mrs. Goodwin, and was conveyed to her.  She is therefore, by virtue of the act above cited, entitled to hold the same, and the rents, issues and profits thereof, "to her sole and separate use ;" and may "convey and devise" the same, and any estate or interest therein, "with the like effect as if she were unmarried ;" and in the enjoyment of these rights the law does, and the courts must, fully protect her.

It has long been settled in equity, that a married woman having a separate estate is, in respect to it, to be regarded as a *feme sole*, with power to dispose of it as though she were unmarried ; and this rule was recognized and firmly established in this state by the late court of errors, in *Jaques* v. *The Methodist Episcopal Church*, (17 *John.* 548,) where the cases upon the subject are cited and examined by Ch. J. Spencer and Platt, J., in opinions which, for their just appreciation of the true character of the marital relation, commend themselves to the careful study of courts and legislators.  The same case establishes that when the disposition of her property is free and not the result of flattery, force or improper treatment, the wife may give it to her husband as well as any other person.  With these established principles in mind we are prepared to examine the real question in this case, which is, what are the respective rights of husband and wife and of the creditors of the husband, (where the wife is the owner as her separate

estate of a farm on which he and she reside with their family, and which is cultivated by the husband without any express agreement,) *in the crops* which are the fruits of her farm and his labor, and out of which the family are supported, and with which he is accustomed to exchange and traffic? To dispose of this question it is not necessary to determine whether the wife may or may not lease her farm to her husband for a term at a stipulated rent, or let it to him to be worked on shares, receiving a portion of the crops for its use. When those questions are presented, they are to be solved upon other principles than those involved in this inquiry.

In the present case the farm was cultivated by the husband, without any agreement except such as is to be implied from the circumstances of the case. While the acts of 1848 and 1849 have the force that is above conceded, it is well settled by authority, and is quite clear upon principle, that the marital rights of the husband in other respects remain unaffected. He is still entitled to the society and services of his wife and family. (*Freeman* v. *Orser*, 5 *Duer*, 477. *Switzer* v. *Valentine*, 10 *How. Pr. R.* 109. *Lovett* v. *Robinson*, 7 *id.* 105. *Coon* v. *Brook*, 21 *Barb.* 546.) And perhaps it will not be doubted that he and his creditors are entitled to the results of his own skill and labor. In raising crops upon a farm, the labor of the farmer and his servants enters into and probably constitutes the greater portion of their value. The produce is more the fruit of labor and skill, than the bounty of nature; and the adage, "he who sows ought to reap," is founded in good sense and sound economy. It is difficult to perceive upon what principle, in a case like the one before us, the mere title of the wife to the land should carry to her the title to the crops which are raised on it by the labor and skill of her husband, his family and herself, while he is occupying and cultivating the farm with her consent, and with no agreement constituting him and them her tenants. In other cases, if the owner of land consent, without any specific agreement, that another may enter into possession and occupy it and raise crops, the relation

is that of landlord and tenant; and the latter is entitled to the crops and to emblements on the termination of his possession. (*Stewart* v. *Doughty,* 9 *John.* 108.) If Mrs. Goodwin were in fact "an unmarried female," (as the law regards her in respect to this farm,) and had tacitly consented to the possession and cultivation of the land by Goodwin for several years, her remedy against him would not be in demanding the crops and suing him for their conversion, but in an action for the value of the use and occupation; and surely her relation to him as wife does not confer greater rights than she would have as a feme sole, all pretense of undue influence or compulsion being out of the question. Under the act of 1849, her power to dispose of the use and occupation is complete; and that she may confer them upon her husband under the well settled rules of equity, is not to be disputed. The acts of 1848 and 1849 have not changed the law in respect to the separate estate of a married woman, *as it existed in equity,* except, perhaps, so far as to obviate the necessity of a trustee in any case, and to confer on her greater powers of disposition. Regarding her separate property as though she were an " unmarried female," we should apply to it now the established principles of equity as they have been hitherto settled and applied in such cases. We have already seen that it is the established law of this state, that the wife may give, under proper circumstances, her separate property to her husband; (17 *John. ubi sup.;*) and it remains to be seen under what circumstances she will be regarded as having given it, or its rents, issues and profits to him. "The rule," says Mr. Clancy, "which may be extracted from the decisions, seems to be this: that if the husband receive the rents or the interest of his wife's separate property without her knowledge, then his executors shall be liable to account and refund; but if he receives them with her privity and without any express dissent, that then his executors shall not be liable to any account, as it shall be construed to be a gift from the wife." * * * " It appears also from these cases, that where the husband is per-

mitted to receive the produce of his wife's separate estate, or where the wife and husband live together during the time that he is so receiving it, no account whatever will be directed. There are however several other cases which have held that an account would be given under such circumstances for one year's income." (*Clancy's Rights of Married Women*, 354.)

The cases from which these rules are extracted by the learned author are *Powell* v. *Hanky*, (2 *P. Wms.* 82;) *Christmas* v. *Christmas*, (*Sel. Cases in Ch.* 2; 2 *Eq. Cases Abr.* 152;) *Dalbiac* v. *Dalbiac*, (16 *Ves.* 116;) *Squire* v. *Dean*, (4 *Br. C. C.* 326;) *Townshend* v. *Windham*, (2 *Ves. sen.* 1;) and it cannot be questioned but that they fully sustain the rules. In *Powell* v. *Hanky*, the husband had received the interest on certain bonds and mortgages settled to the separate use of the wife, without any express authority from her but with her knowledge, though without either acquiescence or objection; and she was held not entitled to an account. In *Christmas* v. *Christmas*, the husband and wife were living amicably together while he was in the receipt of the produce of her separate estate, and this fact was considered as furnishing sufficient ground to infer that such receipt was with the wife's assent. In *Squire* v. *Dean*, the husband had applied the dividends of the wife's separate estate to the general purposes of his family, of which she was a member, and the chancellor refused to give her representatives an account against his estate; and in *Dalbiac* v. *Dalbiac*, Sir William Grant refused an account to the wife because she had lived with the husband, and had the benefit of her income while he was in the receipt of it.

In *Roper on Husband and Wife*, pp. 220, 221, the rule is thus stated: " Since the wife may appoint and dispose of her separate property, so she may give it to, or permit her husband to receive it, which will preclude her right, after his death, to charge his estate with what he so received. * * *. It cannot escape the observation of the reader, that the principle which pervades the cases on this subject is either express gift by the wife to the husband, or an implied gift to him

Gage *v.* Dauchy.

(where it can be raised) of her separate estate, resulting from cohabitation and her acquiescence." " Thus, if the wife expressly or impliedly authorize her husband to receive the interest or rents of her general separate property during his life, this being a gift, there can be no reason to give her any part of them which accrued during his life."

The cases cited by this author are *Smith* v. *Camelford*, (2 *Ves. jun.* 698, 716;) *Milnes* v. *Busk*, (*Id.* 488;) *Pawlet* v. *Delaval*, (2 *Ves. sen.* 663;) *Whistler* v. *Newman*, (4 *Ves.* 146;) and several of the cases cited by *Clancy*, and above referred to. It would not be useful to state these cases here in greater detail. The doctrine which they establish is well stated by the authors cited, and it seems to be well founded in reason and principle. It establishes the power of the wife to confer on her husband the use or income of her separate property as a gift, and that her acquiescence or assent to its receipt or use by him is evidence of a gift by her. The statutes declaring her a feme sole as to such property certainly cannot have diminished her power over it.

It would seem that this doctrine should apply with its greatest force to a case like that at bar. Mrs. Goodwin had a clear right to " the rents, issues and profits" of her farm for her " sole and separate use," had she chosen so to keep them. She had also a clear right to give them to her husband. In accompanying him into the possession of the farm and occupying it with him and their family, and permitting him, without any agreement or arrangement as to the rents or produce, to cultivate it and to use the proceeds in the support of herself and family, and to sell, exchange and deal with the crops at his pleasure, she has conferred on him rights which cannot be withdrawn or repudiated when his creditors seek to collect their demands out of property for which he has exchanged the produce of the farm. Both at law and in equity it is his, and not her's. Any other rule would invert the relation of husband and wife. It would reduce the former t) the condition of a servant of the latter, dwindling him to a *mere serf on her*

*lands,* whose time and services and all his faculties are the property of his wife. It would open a door for the grossest frauds, by making the wife, in defiance of the husband's creditors, the absorbent of all his earnings with which to increase her wealth, while doling out to her *humble partner* barely enough of *her goods and provisions* for his board and clothing.

With these views we are of opinion that the learned justice erred at the circuit, in his charge and refusal to charge as requested, and that the judgment must be reversed and a new trial ordered.

GREENE, J., and MARVIN, J., concurred.

GROVER, J., dissented.

Judgment reversed.

[ERIE GENERAL TERM, February 14, 1859. *Grover, Greene, Marvin* and *Davis,* Justices.]