McCartney *v.* Welch.

JOHNSON, J. concurred,

JAMES C. SMITH, J. dissented.

New trial granted.

[MONROE GENERAL TERM, September 5, 1865. *James C. Smith, Johnson* and *E. Darwin Smith,* Justices.]

———————

McCARTNEY, receiver, &c., *vs.* WELCH and others.

CLAFLIN and others *vs.* THE SAME.

Whenever a husband has received or borrowed the property of his wife under circumstances which in a court of equity would be regarded as creating a debt to her, from him, and as entitling her to be considered and treated as his creditor therefor, he will be allowed to pay such debt from his property, in the same manner and upon the same principles, on which he would be allowed to pay any other debt, to any other creditor; and a payment to her or a transfer of property to her, in consideration of such debt, will not be regarded as a gift, or a voluntary conveyance of property in fraud of his creditors.

W. received from his wife's father a conveyance of a piece of land upon the express understanding that W. might sell the land, and use the proceeds in

McCartney *v.* Welch.

his business, and that at some future time he should pay or secure to his wife, in her own right, the amount of such avails or proceeds. The land having been sold, and the proceeds received and used by W., he accounted and settled with his wife's agent in respect to such proceeds, and gave his promissory notes therefor, payable to such agent, all of which were paid except the sum of $486.29, which amount was *preferred* in an assignment subsequently made by W. for the benefit of his creditors; *Held* that such settlement and assignment having been found to have been made in good faith, and for the purpose of securing to W.'s wife the avails of the land, according to the verbal agreeement with her father, and without any intent to hinder, delay or defraud creditors, W. had a right in equity to make them, and the same were valid as against his creditors. J. C. SMITH, J. dissented.

HORACE B. CLAFLIN and others, composing the firm of Claflin, Mellen & Co., recovered a judgment against Samuel M. Welch, in the supreme court, on the 11th day of October, 1861, for $390.89 ; execution was issued and returned unsatisfied, and the plaintiff commenced an action on the 28th day of January, 1863, against Welch and his voluntary assignees, Bradner and Van Derlip, to set aside the assignment and satisfy the judgment out of the assigned property. The same plaintiffs subsequently recovered another judgment against Welch, on the 18th day of December, 1861, for $179.52 ; execution was issued and returned unsatisfied, and proceedings supplementary to execution were instituted, in which Hugh McCartney was appointed receiver, and on the 12th day of December, 1862, an action was brought in his name, as receiver, against the same defendants, for the same purpose. The actions were tried together, before Hon. T. A. JOHNSON, at the Livingston special term, in July, 1863.

The important facts in these cases are as follows : In 1845, Ralph T. Wood, the father-in-law of Welch, the judgment debtor, divided his property among his children, Mrs. Welch's share being about 140 acres of timbered land, in Ossian, then in the county of Allegany, the deed to which was made directly to Welch. At the time Wood conveyed to Welch, Welch was about going into the mercantile business, and it

McCartney *v.* Welch.

was agreed between them that he might use the avails of the land in his business, and subsequently pay or secure to his wife all that he received from the land. In 1846, Welch received about $200 for lumber sold from said land, and in 1848 about $600, and in 1849 he sold the land for $1950. Welch had and used all the avails. In June, 1860, at the urgent request of her brother, George G. Wood, Mrs. Welch appointed him her agent to settle with her husband, and the account was adjusted, and Welch gave his note for the principal and interest of the debt, amounting to $4970. Upon the same or the following day, at the suggestion of Wood, Welch conveyed to him and he to Mrs. Welch, a house and lot for $1500, and household furniture for $731, in satisfaction for so much of the indebtedness. At the time of this settlement, Welch regarded himself, and was regarded by Wood, as solvent. Welch continued the mercantile business from the time of this settlement until October, 1861, when he made an assignment for the benefit of his creditors. Shortly before the assignment, and after he was aware of his insolvency, at the urgent solicitation of Wood, he transferred to him, in payment of the debt to his wife, property, and notes and accounts sufficient to reduce the debt to about $486, for which amount she was preferred in the assignment. At the time of the settlement with his wife, Welch was not indebted to Claflin, Mellen & Co. Their debt accrued in the spring and summer of 1861. The court found as conclusions of fact: That Wood, the father-in-law of Welch, at the time he conveyed the 140 acres to him, intended it as the portion of Mrs. Welch in his estate, and conveyed it upon the agreement and understanding that Welch should dispose of it, use the avails in his business, and at some future day pay or secure to his wife the whole of such avails. That Welch did sell the timber from the land and the land itself, and received as the proceeds the sum of $2789.57, and invested the same in his own business. That in June, 1860, Mrs. Welch appointed her brother, George G. Wood, her agent to settle

with her husband; that an accounting was had, and the amount of his indebtedness to her liquidated at $4970.67, for which Welch gave his notes payable to Wood as agent, and due presently. That all of said notes had been paid by Welch to said agent, and by him to Mrs. Welch, except the sum of $486.29, for which she was preferred in the assignment. That at the time of the settlement Welch was insolvent and unable to pay his debts, but that the settlement was made and notes given in good faith, and for the *bona fide* purpose of securing to his wife the proceeds of said land, and not for the purpose of defrauding any creditors. That the assignment was made and the preference given to Mrs. Welch in good faith, and without the intent to hinder, delay or defraud the creditors of Welch. That at the time of the settlement, Claflin, Mellen & Co. were not creditors of Welch, and did not become so until April, 1861.

And as a conclusion of law, the court found that the defendants in each action were entitled to judgment that the complaint be dismissed with costs. Judgment having been entered accordingly, the plaintiffs respectively appealed.

*Hubbard & Faulkner*, for the appellants.

*Van Derlip & Smith*, for the respondents.

E. DARWIN SMITH, J. The decision in the case of *Woodworth v. Sweet,*(a) in principle decides this case. This is an action in equity, and was tried as such at a special term, by the judge without a jury. The learned judge who tried the action found as matter of fact, that when the husband received from his wife's father the conveyance of the land, the proceeds from the sale of which constituted the basis of the debt claimed by and allowed to the wife, it was expressly agreed between the said Welch and his wife's father, that he might sell such land and use the proceeds in his business, and that at some

(a) See ante, p. 268.

McCartney *v.* Welch.

future time he should pay or secure to his said wife, in her own right, the amount of such avails or proceeds; that the said conveyance was made upon no other consideration whatever. And the learned judge also finds as matter of fact that the subsequent settlement between Welch and the brother of his wife, acting for her, of such claim was made and the promissory notes therefor given by said Welch for her benefit in *good faith* and for the *bona fide* purpose of securing to the said Catherine (the wife) the avails or proceeds of said land and timber, according to said verbal agreement with her father, and not for the purpose of defrauding any creditors. And the judge also finds that the assignment in the complaint mentioned, and the preferences therein given to the said debt of Mrs. Welch were in *good faith* and without any intent to hinder, delay or defraud the creditors of the said Welch. Upon these findings on the facts, I do not see why the conclusions of the learned judge that the defendants were entitled to judgment that the plaintiff's complaint be dismissed, was not correct. Upon these facts as found by the judge it is clear that the father of Mrs. Welch intended to create a separate estate for his daughter and secure the same to her separate use. He allowed her husband to use such estate, upon his agreement in effect to treat her as his creditor therefor and to be a trustee of the same for her benefit. When Welch settled for the proceeds of her lands sold by him and gave the notes to her brother, therefor, it was precisely the same in legal effect, I think, as though she had received such separate estate at that time from her father, from whom under the acts of 1848-9 she might then receive a separate estate. The settlement between Welch and the brother of Mrs. Welch was made in 1860 when she could take a separate estate as a legal estate, under those acts. If the transaction were an honest one I do not see why the notes then given by Welch for the proceeds of the land and timber received by him from her father were not valid notes, and free from the claim of

McCartney *v.* Welch.

his creditors. He could not at that time make a gift to her at the expense of his creditors; but if he did truly and honestly owe her for money or property received by him as a loan, as and from her separate estate, which had always been received, regarded, and held and recognized as such between them, equity would allow him to pay such debt. Courts of equity have always favored the wife. They have ever followed the civil law, and regarded husband and wife as separate persons, and allowed them to contract with each other as such, in many instances, as unmarried persons. There is no reason in principle, why a wife, if she has a separate property which she trusts to the management of her husband, or money which she loans him, shall not be placed upon the same footing as his other creditors. A man in failing circumstances is allowed to prefer one creditor to another, and if it is fairly and honestly done I can see no reason why a husband in failing circumstances may not prefer and pay his wife, as well as his indorsers, or any other confidential or other creditors. The only reason which can be assigned to the contrary grows out of the temptation and strong inducements which may exist in such cases for the perpetration of frauds for the benefit of the debtor's family. This consideration, I think, makes it especially the duty of courts and juries to scrutinize very closely and carefully all transactions between husband and wife, to see that claims in favor of the wife are not trumped up on the eve of insolvency. The pre-existence of the claims or debts to the wife, at such times and under such circumstances, should be very clearly proved, and their honesty most fully established, before they should be allowed. But if honest, the debt of the wife is none the less sacred because it is due from her husband; and I do not see why the courts should be assiduous to strip the wife of any little patrimony she may have received from her parents or others, because she trusted it to her husband, and relied upon his good faith to repay it to her; even in preference to any other creditor. If the transaction be *honest* and *bona fide*, I know of no reason why a

McCartney *v.* Welch.

woman should not be treated as fairly as any other creditor of an unfortunate husband, in the courts of justice. The case of *Eckles* v. *Babcock,* (24 *N. Y. Rep.* 624,) in the principle decided, controls this case, and was quite like it in some of its facts. In that case Mr. and Mrs. Eckles were married in 1829, and she before that time had inherited property from her father worth $2000, which was sold, and the proceeds received by her husband and invested by him in other lands, in which it was agreed they should be joint owners, the title to which was taken in the name of the husband. In respect to this $2000 Judge Davies says : "Although her husband had reduced to possession the $2000 received on the sale of the land inherited from her father, a court of equity would protect her rights therein, and make a just and proper settlement thereof on her." I think that case must be considered as deciding that whenever a husband has received or borrowed the property of his wife, under circumstances which in a court of equity would be regarded as creating a debt to her from him, and as entitling her to be considered and treated as his creditor therefor, he will be allowed to pay such debt from his property, in the same manner and upon the same principles upon which he would be allowed to pay any other debt to any other creditor ; and a payment to her or a transfer of property to her, in consideration of such debt, will not be regarded as a gift or a voluntary conveyance of property, in fraud of his creditors. That case went up from this district, and I concurred in the decision here and dissented from the decision in the court of appeals, but it was not upon the principles of law asserted in the opinion in that court, upon the merits, that we differed from that court, but simply upon a rule of evidence. We held "that where it appeared in a suit by a creditor of the grantor or vendee of property, on the trial of the cause, that a person conveying property to his wife or other member of his family was considerably indebted at the time of such conveyance, and existing creditors were

unpaid, the burden of proof was cast upon his grantee, or person claiming under such title, to show the bona fides of the transaction." The court of appeals held that there was in this case sufficient evidence of the *bona fides* of the transaction. The policy of the law and the temper of the age, in civilized lands, is in favor of relaxing the former harsh and strict rules of law in respect to married women, and to allow them to take, receive, hold and transfer property like unmarried persons. The disability of coverture still disqualifies husband and wife, at law, from taking title from or conveying the title to property, real or personal, to each other. But otherwise they are quite as distinct as if divorced, and the wife may now sue and be sued separately from her husband, and take and sell and convey property as a single woman, and yet she is not particularly charged with the legal duty of helping to support the family. This burden still pertains exclusively to the husband, though the wife can obviously have no use for property except for that purpose, and to provide against the contingencies, casualties and misfortunes of life. It seems to me, that while husband and wife are living together, the use and income of her separate property, which in fact goes into the support of the family, should be considered as given to the husband for, and devoted to that purpose, beyond recall. I should therefore have been much better satisfied with the settlement between the brother of Mrs. Welch and her husband if it had not included interest on the value or proceeds of her property, while it was used and employed by him in his business. If the principal had been secured to her it was all she ought, under the circumstances, to have required or received, and yet the wife, as the creditor of her husband, has the right to have her funds or property in his hands regarded as lent or invested upon interest, and if the transaction is honest and *bona fide*, it can not, I think, be disallowed at law. The circuit judge has found that this settlement is honest and fair, and I do not see how we can reverse his

McCartney *v.* Welch.

decision upon the evidence, for error in fact. It follows that the judgment must be affirmed, with costs.

· JOHNSON, J. concurred.

JAMES C. SMITH, J. (dissenting.) The conveyance to Welch was executed not only for the purpose of ultimately securing to his wife the proceeds of the lands conveyed, but also for the purpose of devoting those proceeds, in the mean time, to the use and benefit of Welch, in his own right. The court found that the conveyance was executed upon a verbal agreement between Wood, the grantor, and Welch, the grantee, that Welch might and should dispose of the said land, and of the timber thereon, and take and *use* the avails and proceeds thereof; *as capital in his business of a merchant*, in which he was then engaged or about to engage, and at *some future time* pay or secure to his wife, in her own right, the entire amount of such avails or proceeds." It is also found that he sold and disposed of said land and timber, and that from May, 1846, to June, 1849, he realized therefrom the sum of $2789.27, which he invested and used in his said business; that shortly before the 18th of June, 1860, being then insolvent, he accounted and settled with an agent of his wife for said proceeds, in which settlement interest was allowed on said proceeds from the time they were received by him, making in all the sum of $4970.67; that he gave his promissory notes for that amount, payable to said agent or or bearer, which have since been paid, except the sum of $486.29; and that he continued in said mercantile business until the 4th of September, 1861, when he executed an assignment of all his property in trust to pay his debts, in which he preferred said debt to his wife at the sum last mentioned. It is also found that the debt to the plaintiff was contracted in April, 1861.

Upon these facts I am of opinion that the equity of the plaintiff to be paid out of the assigned property is superior

to that of Mrs. Welch, even assuming for the present that she has a claim which will be upheld in equity. The conveyance to Welch furnished him with capital to use in his business, as a merchant. For aught that appeared on the face of the deed the property conveyed became his absolutely. The arrangement out of which the wife's demand arises was secret, and unknown to third persons dealing with Welch. The possession and use of the property and its proceeds, under the circumstances, gave him the same credit as if he had owned the property absolutely. No time was fixed, by the terms of the arrangement, when the proceeds should be paid or secured to his wife. Either the time of payment was optional with Welch or he was liable to pay over the proceeds as soon as he received them, or on reasonable demand thereafter. Whatever construction in that respect be adopted, the proceeds should be regarded, in equity, as dedicated either by the express agreement of Wood, the grantor, or by the acquiescence and consent of Mrs. Welch, the ultimate beneficiary, to a liability for the payment of Welch's debts contracted while such proceeds continued to be used by him and invested in his business. In fact they were allowed to be thus used by him, till he became insolvent. Even after that event, and until after he had contracted the debt which the plaintiffs are seeking to enforce in this action, he was permitted to use so much of the proceeds as he afterwards undertook to secure to his wife by the preference in the assignment. It is inequitable to permit his wife now to step in and withdraw the means thus employed by him, at the expense of creditors who trusted him on the faith of such means.

The case is no stronger for Mrs. Welch than if she had received the proceeds of the land directly from her father, as her separate estate, and had then permitted her husband to use it as capital in his business of a merchant, under a verbal agreement to pay or secure it to her at some future time. In such a case, I apprehend, her equity would be postponed to that of creditors. (*See Gaye* v. *Dauchy,* 28 *Barb.* 622, *and*

McCartney v. Welch.

*authorities there cited by Davis, J.*) So, even if he had carried on the business *in the name of his wife,* prior to the statute of 1860. (*Buckley* v. *Wells,* 42 *Barb.* 569. *Sherman* v. *Elder,* 24 *N. Y. Rep.* 381.)

But if I am wrong in this, there can be no question that under such circumstances the wife would be held to have conferred upon her husband the *use or income* of her separate property, as a gift. (*Clancy's Rights of Married Women,* 354, *and cases there cited.*) And, therefore, whether Welch be regarded as deriving his rights directly from Wood, or from his wife, he was entitled to the whole use and income of the capital while it was invested by him in his business, and his wife had no claim for *interest* thereon, even in equity. By the terms of the deed he had a right to use the proceeds of the land, and she had no right to interest thereon while he used them. Before the assignment was executed she had been paid more than the whole principal with interest on it from the time of the accounting and settlement, and there was nothing due her. Even if we regard the preference in the assignment as a settlement upon the wife for a valuable consideration, it can only be upheld to the extent of the consideration, as against creditors. (*Schaffner* v. *Reuter,* 37 *Barb.* 44. *Garlick* v. *Strong,* 3 *Paige,* 452.)

In any view of the case, therefore, I am opinion that at the time when the assignment was executed Mrs. Welch had no claim against her husband which could be enforced or upheld, either at law or in equity. It follows that the preference of her claim, in the assignment, of legal necessity, had the effect of defrauding the plaintiffs.

There is no question of mistake, in fact, in preferring her demand, or of an unintential over statement of its amount. In short, the facts of the case are undisputed. If the views of the law above expressed are correct, there can be no doubt that in case the facts found by the court respecting the consideration of the debt to Mrs. Welch had been stated in the assignment, the preference of her debt would have amounted

to conclusive evidence of fraud, and it would have been the duty of this court to set aside the finding in opposition to such evidence. (*Cunningham* v. *Freeborn*, 1 *Edw. Ch.* 256. *S. C.* 3 *Paige*, 557. *S. C.* 11 *Wend.* 240. *Nicholson* v. *Leavitt*, 2 *Seld.* 510. *Dunham* v. *Waterman*, 17 *N. Y. Rep.* 9.) I am prepared to hold that the same rule should be adopted in cases where *extrinsic* facts, conceded or 'established *without dispute*, make the assignment necessarily fraudulent according to the law of the case. The special term case of *Webb* v. *Daggett*, (2 *Barb.* 9,) is a decision in support of this position. To the same effect are the opinions of Justices Nelson, in *Cunningham* v. *Freeborn*, (11 *Wend.* 254, 255;) Denio, in *Edgell* v. *Hart*, (5 *Seld.* 219;) and Sutherland, in *Babcock* v. *Eckler*, (24 *N. Y. Rep.* 632.) For these reasons I am of opinion that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Judgment affirmed.

[Monroe General Term, September 5, 1865. *Johnson, J. C. Smith* and *E Darwin Smith*, Justices.]