ANN SAVAGE, Appellant, *v.* EDWARD O'NEIL, Respondent.

There is no presumption that the common law is in force in Russia. Such presumption applies only to England, and the States which have taken the common law from England. In the absence of proof, as to the laws of other foreign countries, our own law must furnish the rule for deciding the rights of parties litigating in the courts of this State.

Where the evidence shows only that the plaintiff received money from her mother in Russia, when she became twenty-one years of age; that she was married in 1847, came to this State in 1857 and had since resided here, there being no proof as to what were the laws of Russia, and no positive proof as to where she resided when she received the money, or at the time of her marriage, the laws of this State must govern in determining questions affecting her rights and property.

If a married woman loans directly to her husband money which has been given to her, whether given before or since the act of 1848, and which he has always treated as her separate property, he becomes in equity her debtor. Being equitably bound to pay, he may do so voluntarily, and either in money or other property. If he repays, although voluntarily, since the acts of 1848 and 1849, she holds the money or property thus received by a strictly legal title, good against her husband and his creditors.

Accordingly, upon the following facts: the plaintiff received money from her mother in Russia when she became twenty-one, but it was not shown in what year; was married in 1847; came to this State from Russia in 1857; had since resided here; kept the money partly in savings banks and partly in her personal custody, her husband at all times treating it as her separate property; loaned over \$1,200 to her husband in 1861, he giving to her his notes therefor; received from him in 1862, after the notes had matured, a bill of sale of the goods in question, in payment of the notes, which were then canceled, and took possession of the goods. —*Held*, in replevin against a constable who had seized the goods on executions against the husband (LOTT, Ch. C., contra), that the bill of sale was good as against creditors, and the plaintiff was the legal owner of the property.

(Argued for the Appellant and submitted on the part of the Respondent, January 6; decided May 1st, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the seventh district, granting a new trial. The cause was tried at the Monroe Circuit by the court and a jury.

This was an action of trespass against the defendant for

taking a quantity of goods from a store in the city of Roches-
ter. The plaintiff is the wife of Maurice A. Savage. The
defendant justified the taking as a constable and by virtue of
executions and judgments against the husband, claiming that
the property belonged to him. The proof showed that for
two years prior to January 2, 1862, Maurice A. Savage was
the owner of the store of goods and conducted the business.
The wife testified that on that day her husband executed a
bill of sale to her of the goods in payment of a debt of $1,220,
which he owed to her for money loaned to him by her; that
she got the money thus loaned from her mother in Russia
when she became twenty-one; that she was married in 1847;
came to Rochester from Russia in 1857, and had ever since
resided in Rochester; that she took possession of the goods
after the transfer to her, and had possession at the time of
the taking. The defendant at the trial claimed that the trans-
fer to the wife gave her no title, and that there had been no
change in the possession of the property. The jury found a
verdict for the plaintiff. Judgment was stayed and a motion
made for a new trial at the General Term, in the seventh dis-
trict, and a new trial was granted. The plaintiff appealed
from the order granting a new trial. The case below is
reported 42 Barbour, 374.

*A. J. Wilkin,* for the appellant, cited *Tallman* v. *Smith*
(39 Barb., 390); *Allen* v. *Cowan* (23 N. Y., 502); *Merrit* v.
*Lyon* (3 Barb., 110); *Garlick* v. *Strong* (3 Paige, 440); *Pat-*
*ridge* v. *Havens* (10 Paige, 618); *Wicks* v. *Clark* (8 Paige,
161); *Westervelt* v. *Gregg* (2 Kern., 202); *Shafner* v. *Butler*
(37 Barb., 144); *Smart* v. *Comstock* (24 Barb., 411); 1 Penn.,
327; 6 Watts & Serg., 290; 5 Wharton, 138; 2 John. Ch.,
537; 10 Vesey, 146–9; 4 Comst., 284; 32 N. Y., 423, 629;
39 N. Y., 45; 3 Wharton, 48; 10 Bosw., 314; 26 How., 350;
17 How., 514; 44 Barb., 268, 271.

*H. H. Woodward,* for the respondent, cited *Van Arsdale*
v. *Dixon* (Lalor, 358); *White* v. *Wager* (25 N. Y., 328);

*Garlick* v. *Strong* (3 Paige, 440); 6 Wend., 13; *Gage* v. *Dauchey* (34 N. Y., 297); *Little* v. *Willetts* (37 How., 481); *Holmes* v. *Boughton* (10 Wend., 75); *Collet* v. *Keith* (2 East, 261); *Walker* v. *Maxwell* (1 Mass., 103); 2 Phil. Ev. Notes, 428, 413; Clancy, 1; *Rider* v. *Hulse* (N. Y., 372); *Westervelt* v. *Gregg* (2 Kern., 202); *Starr* v. *Peck* (1 Hill, 270); *Davis* v. *Garr* (2 Seld., 124); *Griffin* v. *Marquardt* (17 N. Y., 29); 10 N. Y., 309.

EARL, C. The evidence shows that the plaintiff received money from her mother in Russia when she was twenty-one years old; that she had been married sixteen years; and that she left Russia six years before the trial, and came to Rochester, and had lived there since. She kept some of the money in a savings bank and some in her own possession, and from time to time loaned some to her husband, and he repaid it to her. On the 2d day of April, 1861, she loaned him of this money $800 and took his note, payable in eight months, and in September of the same year she loaned him $420 and took his note, payable in three months. On the 2d day of January, 1862, he transferred to her by bill of sale the goods in store, in payment of these notes, and the notes were canceled.

The plaintiff and her husband were married in 1847, but it does not appear where they were married, nor where they lived at the time of their marriage, and it does not positively appear that they lived in Russia when she got the money. All that appears upon this subject is that she got the money of her mother in Russia, and that she afterward left Russia and came to this country, and it does not appear in what year she got the money of her mother.

As I view this case, it is wholly unimportant whether we assume that the plaintiff and her husband were citizens of Russia or whether we assume they were citizens of this State at the time she received this money from her mother.

There is no proof what the laws of Russia in reference to the property and rights of married women were, and there is no presumption that the common law was in force there.

Such a presumption is indulged by our courts only in reference to England and the States which have taken the common law from England. The courts cannot take notice of the laws of Russia unless they are proved, and in the absence of proof our own law must of necessity furnish the rule for the guidance of our courts. (*Monroe* v. *Douglass*, 5 N. Y., 447; 2 Cowen & Hill's Notes, Van Cott's ed., 326, 327.) Hence in any view, the law of this State, in reference to the property and rights of married women, must furnish the rule for the decision of this case.

While I do not think it of the least importance whether it was before or after 1848, that the plaintiff received this money from her mother, there is no proof, and there can be no presumption that it was before 1848. She had this money for at least five or six years before she loaned it to her husband, she got it from her mother, claimed it as her separate property, and it was recognized and treated as such by her husband. If under such circumstances, the husband's creditors claim that the money really belonged to him, because it was given to the wife before 1848, they should prove it, and not ask the court to presume it. But if the plaintiff received the money as a gift from her mother, before 1848, the husband chose not to avail himself of his marital right to claim it. He consented that his wife might have it as her separate estate, and it thus became her separate estate in equity, and when she loaned him the money she became in equity his creditor, and he was equitably bound to pay her according to his agreement, and its payment could in equity be enforced against him. While he was in equity bound to pay his wife, and she could compel him to do so, is there any reason for saying that he could not pay her voluntarily? Suppose he had repaid to her the money, will it be claimed that his creditors could take the money away from her?

It has frequently been held, that the husband has the right, and owes the duty, to pay such a debt, and that he can prefer it in a voluntary assignment made for the benefit of his creditors. (*Schaffner* v. *Benton*, 37 Barb., 45; *Wolfe* v. *Security*

*Fire Ins. Co.*, 39 N. Y., 49 ; *Woodworth* v. *Sweet*, 44 Barb., 268 ; *McCartney* v. *Welch*, 44 Barb., 271 ; *Jaycox* v. *Caldwell*, 37 How., 241 ; *Winans* v. *Prebles*, 32 N. Y., 423 ; *Borst* v. *Spelman*, 4 N. Y., 284 ; *Babcock* v. *Eckler*, 24 N. Y., 623 ; *Livingston* v. *Livingston*, 2 John, Ch. 537 ; *Wallingford* v. *Allen*, 10 Peters, 583 ; Story's Eq. Jur., sec 1366, &c., and 1402, &c.) The payment of such a debt by the husband is not void in such a sense as to leave the title to the money paid in him ; and the same must be true if payment is made in any other property, not money. After this property was transferred and delivered to the plaintiff, in payment of the notes, it belonged to her, and she held it under the statutes of 1848 and 1849, and the laws amendatory thereof, by a strictly legal title, good against her husband and all his creditors. A wife can enter into contract for the purchase of personal property from her husband. Such a contract would be void in law, but if founded upon a sufficient consideration passing from the wife, it could be enforced against the husband in equity. While the contract remained executory, and the husband had not delivered the property to the wife, she would have against him a merely equitable claim. But after the husband had delivered the property to her, she would hold it by a strictly legal title, as she held her other separate property. So a wife can loan money to her husband, and before repayment by him, she has a claim against him which she can enforce in equity, and which she cannot enforce at law, but he owes her the duty of payment, and when he has voluntarily paid her, then she holds the money paid by a strictly legal title, as she holds her other money, and it can make no difference whether she be paid in money or other property.

Upon the trial the motion for a nonsuit was upon the sole ground that the transfer of the goods from the husband to the wife was invalid, and gave her no title. It was not in any way claimed that the evidence did not show that the husband had sufficiently waived and relinquished to his wife his marital right, if he ever had any, in the money which she

got from her mother, or that her debt against her husband was a valid debt. The claim made was that the husband could not pay the debt by a transfer and delivery of the property directly to the wife, and it was upon this claim alone that the General Term granted a new trial; and in this, as I think I have sufficiently shown, there was error.

I, therefore, favor a reversal of the order of the General Term, and a judgment for the plaintiff upon the verdict with costs.

LOTT, Ch. C., dissenting. The bill of sale to the plaintiff, from her husband was void at common law, and assuming that the title claimed under it, could be sustained on proof by her, that it was given and accepted in satisfaction of a debt due to her for money lent him from a separate estate belonging to her, there appears an insuperable objection to her recovery. The evidence does not warrant the conclusion that she had such separate estate, She testified that she received the money for which the notes were given from her mother in Russia when she was twenty-one years of age, that she was married in 1847, that she left Russia in 1857, brought the money with her, put some of it in the Rochester Savings Bank and kept the residue in her bureau, and that she had made loans of a part two or three times, which had been repaid besides the money for which the notes were given.

Although it is not stated in terms that she was a native of Russia and married there, no other conclusion or inference can fairly or properly be drawn from her testimony.

There was no proof of any law or regulation in Russia that secured the property to her as her separate estate, nor of any agreement between her and her husband before she left Russia, that the money received there and brought over here with her was to be her separate estate. Nor is there any evidence that the money was paid to her after the passage of statutes of this State in 1848, p. 307, and 1849, p. 528, securing the ownership of property to married women as their

separate estate.    All that is proven is that she received it when she was twenty-one years of age, but it does not appear when she attained that age.    There is, therefore, nothing in the case to show that the rights of the plaintiff and her husband were not to be governed, controlled and determined by the rules of the common law when she took the notes for which the bill of sale was given.    (See *Monroe* v. *Douglas*, 5 N. Y. R., 1 Selden, p. 447.)    That transaction cannot be construed into a settlement of the amounts for which the notes were given for the separate use of the wife.    It is clear that it was not so intended.    On the contrary the parties appear to have acted on the mistaken assumption that the wife could hold and dispose of the money as her own, notwithstanding her coverture.    The most that can be claimed from the facts in the case is, that the husband had not asserted his marital rights, but, in the closing language of WRIGHT, J., in giving the opinion of the court in *Ryder* v. *Hulse* (24 N. Y. Rep., 372– 380) :   " It cannot be that because a husband suffers his wife to manage and deal with his estate as though it were her own, that he divests himself of ownership and assumes the character of trustee to hold it to her use."    Much less can the omission to assert his own marital rights to the property owned by his wife, at the time of her marriage or subsequently acquired, operate to the prejudice of his creditors.    Assuming the views above expressed to be correct, the court erred in denying the motion made on the close of the testimony, for a nonsuit on the ground that the transfer of the goods from the husband to the wife was invalid and gave her no title, and also in refusing to charge the jury, that if they found that the sale of the goods was from husband to wife, that is in itself void, and also in holding that the defendant was limited to the two questions, whether there was actual fraud, and as to the value of the property.    I will only add, that the court could not, after the evidence given by the plaintiff, that her husband after the sale of the goods never staid in the store, and that he never sold any thing after she bought it out, charge, as requested by the defendant's counsel, " that if the court holds

that the husband could sell to the wife, then that the continued possession of the property in the husband without any change of possession, as this sale in this case, raises the presumption that the sale is fraudulent, and that, as against these creditors, it is absolutely void, unless shown to be in good faith." The request, therefore, was properly refused.

The order for a new trial was, on the other grounds, above stated, properly granted. It must, therefore, be affirmed with costs, and judgment absolute must be rendered against the plaintiff, with costs, pursuant to her stipulation.

For affirmance, LOTT, Ch. C.

For reversal EARL, HUNT, LEONARD and GRAY, CC.

Order of the General Term reversed and judgment ordered for the plaintiff upon the verdict, with costs.