Woodruff v. Clark & Apgar.

---

### HARRIET L. WOODRUFF v. CLARK & APGAR.

1. A sale of chattels made by a husband to his wife, unaccompanied by a delivery, cannot be enforced in an action at law by force of the statutes of this state relative to married women.
2. Goods sold by a husband to his wife, but not delivered to her, were seized under execution by the creditors of the husband. *Held*, that replevin for such goods would not lie in favor of the wife.

---

In replevin.

The property in dispute was claimed by the plaintiffs by virtue of a chattel mortgage executed to her by her husband, to secure the sum of $350, alleged to be due to her from him for so much money loaned to him by her. This mortgage was due. The chattels mortgaged remained in the possession of the husband, and were seized by a subsequent execution against him in favor of the defendants.

The case came before this court for its advisory opinion, the question reserved being, "Whether a husband can execute to his wife a mortgage on his goods and chattels, upon which the wife can maintain an action of replevin on the facts as stated."

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiff, *W. W. Anderson.*

For the defendants, *Alvah A. Clark.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   To substantiate her title and thus manifest her right to the property replevied, the plaintiff was compelled to produce and prove the chattel mortgage given to her by her husband.   These chattels had never been in her possession, and consequently the plaintiff had no standing on the legal merits of the case, unless she could establish the validity in law of this conditional sale.   That this transfer was enforceable in equity, and that the title of the plaintiff would have been protected in that *forum* against the claims of her husband's creditors, no one will deny, the only question being, whether such transfer can be recognized and effectuated by a court of law.

It is obvious at a glance that if such legal recognition is to be accorded to this transaction, such a consequence must proceed wholly from legislation, for at the common law, this sale proceeding directly from the husband to the wife, was an absolute nullity.   Such has been, within the prevalence of that system, the invariable judicial declaration whenever the subject has been presented for consideration.   "*Baron and feme,*" says Lord Coke, " be one person in law, so as neither of them can give any estate or interest to the other."   *Co. Litt.* 188, *a.*   The modern authorities utter the same expressions. 1 *Bright. H. & W.* 29.   In *Wallinsford* v. *Allen,* 10 *Peters* 583, the court sustained in equity a conveyance of slaves by a husband to his wife in consideration of a discharge of a decree for alimony, remarking that, " agreements between husband and wife, during coverture, for the transfer from him of property directly to the latter, are undoubtedly void at law."   The same rule is expressed with equal directness by Chancellor Green in the case of *Skillman* v. *Skillman,* 2 *Beas.* 407, and by Mr. Justice Depue in *Horner* v. *Webster's Ex'r,* 4 *Vroom* 387. The doctrine is treated as fully settled by Judge Story, in his treatise on Equity Jurisprudence, § 1372.   The result is that, upon admitted principles, this mortgage, considered irrespectively of any legislative innovation, would have been, for the purposes of a common law action, wholly inefficacious.   The

only point to be considered, therefore, is, whether the statutes of this state have imparted to the matrimonial relationship a new capacity in this particular.

On this head I have found no difficulty. In the briefs of counsel this question is discussed on the basis of the large capabilities conferred upon married women by the recent laws enacted on that subject, and with reference to the policy of such legislation; and it may well be that if the present inquiry was open to such a range of considerations and deductions, to reach a satisfactory conclusion would not be free from embarrassment. I think there is much force in the remarks of Mr. Bishop, in his work on the Law of Married Women, § 368, that it ought, in the absence of special provision, to be held under statutes of this class, that whenever general power of contract is given to the wife, to the extent of such power the husband and wife can contract together. But although by the statute of this state entitled "An act to amend the law relating to the property of married women," passed March 27th, 1874, (*Rev., p.* 636,) a general authority is conferred upon a woman under coverture, to acquire and hold property and to enter into contracts, as though she was a *feme sole,* still it is expressly provided that such authority does not extend so far as to empower her to contract with her husband. The restriction to which I refer is contained in Section 14 of this law, and is comprehended in its last clause, which is in these words: "Nor shall anything herein enable husband or wife to contract with or to sue each other, except as heretofore." This language is not uncertain, and the provision is perspicuous with respect to its policy. The object was to leave the husband and wife, touching their capacity to bargain together, on the ancient footing of the common law. The clause is virtually a legislative declaration that, as heretofore, they may enter, *inter sese,* into equitable agreements, but not into legal agreements. It was obviously intended that the court of equity should, as it had always done, prior to the amplification of the rights of the wife, exercise a supervision over the engagements of married persons. Nor is it deemed that such an adjustment was an unwise

or illiberal one. The subject is one that requires more delicate handling than could be given to it through the instrumentality of a jury. Contracts of this class do not always rest, in point of validity, on fixed and palpable rules of law; sometimes they approach closely to the field of discretion. In referring to the power that the *feme covert* has of bestowing her separate property by appointment or otherwise on her husband, as well as upon a stranger, Judge Story remarks: "But at the same time, courts of equity examine every such transaction between husband and wife with an anxious watchfulness, and caution, and dread of undue influence; and if they are required to give sanction or effect to it, they will examine the wife in court, and adopt other precautions to ascertain her unbiassed will and wishes." So it often happens that relief is afforded only upon equitable conditions. All these precautionary measures would be wanting to a suit at law. The union arising from the matrimonial connection is so entire, the interest so mutual and the confidence so complete, that the question in the given case, whether a transfer of property has been equitably obtained by one of the married persons from the other, or is the creature of coercion or undue influence, is often one of the most subtle and abstruse subjects that can be presented for judicial investigation—an investigation to which the methods of a court of conscience are alone adapted. Few subjects would seem to fall more appropriately under equitable cognizance, and it was the manifest legislative intention to preserve for the protection of these important interests, the guards of that system of procedure. At all events, the will of the legislature is expressed in an unequivocal manner, to leave unaltered the *status* of married persons in relation to this subject, and the consequence is the contract in question cannot be carried into effect in a court of law.

Nor have I found anything that militates with this view in any of the cases cited in the brief of the counsel of the plaintiff. None of such decisions appertain to statutory provisions similar to those that are in force in this state. In the main they are mere deductions finding a power in the wife to trans-

fer property to her husband, or to take conveyance from him, from the circumstance that the disability of the wife to hold her property in her own right in connection with a capacity to protect it by suit, had been removed by appropriate legislation, such legislation containing no preventions against her dealing in such particular with her husband. But even some of such cases do not go to a length that would sustain the present action, and this is noticeably so with respect to the decision in *Savage* v. *O'Neil*, 44 *N. Y.* 298. This was a suit in replevin for goods sold by the husband to the wife, who was plaintiff, and which goods, as in the present case, had been seized by the husband's creditors under execution. The decision was in favor of the wife's right of action, but such result was put on the ground that the chattels in question had been actually put into the possession of the wife, a circumstance of which the present case is altogether devoid. It is expressly declared in the opinion read in the case, that the action would not have lain but for the fact of such delivery. Indeed, the entire doctrine by force of which the result above expressed in the case now pending has been reached, is conceded in the opinion here referred to. The expressions of the court are so much in point, that it will tend to the elucidation of the subject under discussion to quote them: " A wife," says the opinion, " can enter into contract for the purchase of personal property from her husband. Such a contract would be void in law, but if founded upon a sufficient consideration passing from the wife, it could be enforced against the husband in equity. While the contract remained executory, and the husband had not delivered the property to the wife, she would have against him a merely equitable claim." It is clear this case is an authority adverse to the maintenance of the present action, nor is it necessary at the present time to consider what would be the effect, in view of the peculiar provisions of our own statute, of a sale of a chattel by the husband to the wife, if accompanied by a transfer of the possession.

Nor are the adjudications cited from the Kansas reports at all to the present purpose, as in the leading case of *Going* v.

*Orns,* 8 *Kansas* 89, it is admitted that such interests as we have in hand are equitable claims, and are properly cognizable in chancery where such a tribunal exists, and that the only reason why they can be enforced at law in that state is, because of the abolition of equitable procedures in that jurisdiction.

The Circuit Court should be advised that this action cannot be sustained.