Garrett H. Smith, Plaintiff, *v.* Compania Litografica De La Habana, Defendant.

Supreme Court, Kings County, April 1, 1926.

Contracts — validity — actions for breach of contract of employment and for commissions — evidence shows parties had contract relations beginning in November, 1914 — parties executed agreement in Cuba on August 1, 1918, reciting new arrangement — said agreement contained postscript reciting " if we terminate this contract we will begin a new one on the basis of commission," but did not fix any period in years during which it was to run — parol evidence as to talk contemporaneous with execution of agreement of 1918, inadmissible — validity of agreement in absence of evidence showing application of law of Cuba must be predicated upon law of forum — agreement invalid under Statute of Frauds — plaintiff's claim that oral contract is embodied in various writings of parties, without merit — complaint as to first cause of action dismissed — verdict directed in favor of plaintiff as to second cause of action.

In an action for breach by the defendant of an alleged contract of employment and an action for commissions claimed to have been earned prior to said breach, wherein it appears that plaintiff and defendant had contract relations beginning in November, 1914, whereby plaintiff was to represent defendant in the United States and Canada " for five years with rights of renewal " on a commission

basis, and that thereafter, on August 1, 1918, the parties signed a paper in Cuba setting out a new arrangement between them which obligated the defendant to pay the plaintiff a flat sum on a monthly basis, and recited a postscript signed by both parties " if we terminate this contract we will begin a new one on a basis of commissions," but made no reference to any period in years during which it was to run, parol evidence of a talk plaintiff claimed to have been had contemporaneous with or immediately prior to the execution of the 1918 agreement, on the theory that said agreement being silent as to its period of operation, such evidence is admissible to supply such a term is inadmissible, for the reason that parol evidence of such a term is only admissible where a period resting in parol relates to *the* written contract it is claimed that the unwritten term is a part of; in the instant case, the period of operation in the parol evidence does not relate to the contract set out in the 1918 agreement, but to an entirely different contract.

Moreover, said parol evidence varies and contradicts the postscript and, therefore, is not admissible on the theory that the postscript is ambiguous.

Since the contract was made in Cuba, in the absence of evidence showing the validity of the agreement under the law of Cuba, the court must apply the law of the forum, whether it be common or statutory; consequently, even assuming that the parol evidence of the claimed contemporaneous contract entered into between the parties, as of August 1, 1918, and to have operation at the termination of the August 1, 1918, agreement, is admissible, said contract is invalid because of the Statute of Frauds, in that it was an oral contract for a term of five years, with a right of renewal.

A claim by the plaintiff that the oral contract claimed to be contemporaneous with the 1918 agreement is embodied in writings in a manner that caused it no longer to rest in parol, and, therefore, does not offend the Statute of Frauds of the forum, is without merit, since an examination of the evidence shows that the contract sued on is not the contract plaintiff claims to have been subsequently incorporated in the correspondence; on the contrary, the elements of the alleged originally oral contract put in writings, are at best a doubtful admission of elements of *a* contract, but not *the* contract sued on and relied upon in the evidence of this case.

Therefore, defendant is entitled to the direction of a verdict dismissing the complaint in plaintiff's first cause of action; however, accepting plaintiff's theory and figures with respect to the second cause of action for commissions a verdict must be directed for the plaintiff.

MOTION by both plaintiff and defendant for the direction of a verdict in an action for breach by the defendant of an alleged contract of employment and in an action for commissions claimed to have been earned prior to said breach.

*Lucius L. Gilbert*, for the plaintiff.

*Sullivan & Cromwell* [*E. H. Sykes* of counsel], for the defendant.

CARSWELL, J.    The plaintiff and the defendant each move for a direction of a verdict. They have stipulated that the motions may be decided with the same force and effect as if they had been disposed of on the trial. There are two causes of action. One for $80,000 damages for breach by the defendant of an alleged contract of employment and a second for commissions claimed to have been

earned prior to the said breach and not paid by the defendant. The determination herein should be one that will conform to section 457-a of the Civil Practice Act (as added by Laws of 1921, chap. 372); that is, such a verdict should be directed which, if found by a jury, would not be required to be set aside as being against the weight of the evidence. The trial court has no advantage over an appellate court in deciding the questions of fact herein, because with the exception of the plaintiff's testimony the evidence is documentary or has been adduced by depositions.

(1) As to the first cause of action I am of the opinion that the plaintiff should prevail (A) unless the documentary evidence precludes acceptance of the parol testimony of the plaintiff; (B) or unless after its acceptance it is futile because the law makes a contract founded thereon unenforcible; (C) or if, because the memoranda relied upon as incorporating the oral contract, is not a sufficient memorandum of the alleged contract, signed by the party to be charged therewith so as to be valid in law. Each of these aspects will be taken up in its order and merely my conclusions thereon stated.

(A) The plaintiff and the defendant had contract relations beginning in November, 1914, whereby the plaintiff was to represent the defendant in the United States and Canada " for five years with rights of renewal " on a commission basis of " either 10 per cent. or 5 per cent. according to prices quoted." On August 1, 1918, the plaintiff and defendant signed a paper in Cuba which set out a new arrangement between the parties and obligated the defendant to pay the plaintiff a flat sum on a monthly basis. This paper of August 1, 1918, had a postscript, also signed by both parties, as follows: " P. S. If we terminate this contract we will begin a new one on the basis of commission." The contract referred to (the one to which this postscript was appended) did not fix any period in years during which it was to run. The plaintiff has adduced parol evidence of a talk claimed to have been had contemporaneous with or just prior to the moment of signing of this August 1, 1918, paper. The defendant asserts that this parol evidence is not admissible on any theory and plaintiff asserts that it is admissible on several theories. (1) That the paper of August 1, 1918, being silent as to its duration, parol evidence is admissible to supply such a term. This is unsound. Parol evidence of such a term is only admissible where the period resting in parol relates to *the* written contract it is claimed that the unwritten term is a part of. In this case the period of duration in the parol evidence does not relate to the contract set out in the August 1, 1918, paper, but to an entirely different contract. It relates to a claimed revival,

in whole or part, of the original contract of 1914, which is not part of the contract of August 1, 1918, because that paper contains a provision that it is to be deemed as " rescinding all previous agreements and contracts." This parol arrangement in its other particulars is a separate and independent contract that has no relation to the August 1, 1918, paper, except the claim that it was *a then existing* contemporaneous agreement to take effect on the termination of the August 1, 1918, paper. (2) It is claimed that the postscript to the August 1, 1918, paper makes this oral evidence (claimed to be contemporaneous with the signing of that paper) admissible by way of explaining the ambiguity of the postscript or supplementing it. (a) The postscript itself is not ambiguous. (b) If, however, it be deemed ambiguous or deemed to be of such a character that it is incomplete and needs explaining the contemporaneous parol evidence does not explain or clarify the postscript. It varies and contradicts the postscript, and for that reason the parol evidence was not admissible. This contradiction consists in the fact that the postscript says that if the parties terminate this contract, meaning the written contract, they will begin a *new* one on the basis of commission. The parol evidence purports to be a then existing contract, complete in its terms and agreed to before the signing of the August 1, 1918, paper, or purports to be the complete agreed upon revival of the old terms of the 1914 contract. It is, therefore, not a *new* contract, reference to which is contained in the postscript. A contract already in existence is not a *new* contract. It is *another* contract, different but not new. This parol evidence may not be accepted because it is contradictory of the written terms of the paper of August 1, 1918, both with respect to the first paragraph thereof, stating that all previous agreements were rescinded and with respect to the terminology of the postscript, which does not contemplate the *then* existence of another agreement, contemporaneous with the August 1, 1918 paper or written agreement, but merely contemplates another contract to be entered into and agreed upon at some subsequent time, to wit, when the August 1, 1918, written agreement is terminated.

(B) We will assume, however, that the parol evidence of this claimed contemporaneous contract entered into between the parties as of August 1, 1918, and to have operation at the termination of the August 1, 1918, paper or agreement, is admissible. If it is an oral contract for a period of five years with the right of renewal, may it be enforced in this State? This oral contract was made in Cuba. What law governs this contract? The general rule is that the *lex loci contractus prima facie* determines the validity, obligation and legal effect of a contract. This rule yields to an

express or implied contrary intention of the parties that some other law is to control. When a contract is to be performed in a place other than the one in which it was entered into, it is presumed that the parties intended that the *lex loci solutionis* is to control. When the place of performance is in different States or countries the presumption as to the intention of the parties to have the *lex loci solutionis* control does not obtain and the general rule applies in the absence of an express agreement to the contrary. (*Stumpf* v. *Hallahan,* 101 App. Div. 383; affd., 185 N. Y. 550; *King* v. *Sarria,* 69 id. 24, 32; *Fish* v. *D., L. & W. R. R. Co.,* 211 id. 374, 382; *Dyke* v. *Erie R. Co.,* 45 id. 113, 116; *Everett* v. *Vendryes,* 19 id. 436; *Bowen* v. *Newell,* 13 id. 290; *Graham* v. *First Nat. Bank of Norfolk,* 84 id. 393, 400; *Hall* v. *Cordell,* 142 U. S. 116; *Turnow* v. *Hochstadter,* 7 Hun, 80; 12 C. J. 450, § 31.) In this case, if it be deemed that the place of performance is New York, then the law of the forum controls. If it be deemed that the contract was to be performed in New York and also in other parts of the United States, then the *lex loci contractus* controls, that is Cuba. If we disregard the place or places of performance, then the general rule of *lex loci contractus* controls herein, that is Cuba. The result herein, *under the state of the proof* is the same no matter which one of these three different lines of inquiry is held to have effect. That is the *lex loci solutionis* and the *lex loci contractus* herein, under the proof and the presumptions applicable or inapplicable thereto, is the law of the forum. The law of Cuba was not proven herein. There is a presumption that the common law of England obtains in this State and in States and countries which adopted the common law from England. This presumption does not have application to any other foreign country or State. The presumption does not apply to Cuba. Therefore, we have no law of Cuba to apply herein. In such a situation where no law is available by proof or with aid of presumption, the court in the absence of presumption or proof, is relegated to the applicable law of the forum whether it be common or statutory. (*Savage* v. *O'Neil,* 44 N. Y. 298; *Crashley* v. *Press Pub. Co.,* 179 id. 27, 32; *Lucia Mining Co.* v. *Evans,* 146 App. Div. 416, 422; *Schweitzer* v. *H.-A. P. A. Gesellschaft,* 149 id. 900, 903.) The law of the forum for the practical purposes of this case, under the proof, becomes the law of Cuba. Under the law of the forum this claimed oral contract is without validity because of the Statute of Frauds, even assuming it is not part of the common law of this State. The defendant pleads the New York Statute of Frauds. There is authority for the proposition that the English Statute of Frauds (Lord Tenterden's Act) became part of the common law of this State, and that our Statute of Frauds is merely declaratory

of that common law.  (*Cahill Iron Works* v. *Pemberton*, 27 N. Y. Supp. 927.)  On that theory, if we were to assume that only the common law of New York applied in this case or obtained by presumption in Cuba, the same result indicated above would ensue.

(C)  It is claimed, however, that the oral contract claimed to be contemporaneous with the August 1, 1918, paper is embodied in writings in a manner that caused it to no longer rest in parol, and, therefore, its claimed ultimate written form does not offend the Statute of Frauds of the forum.  This claim has for its basis the correspondence between the parties, particularly the letter of November 16, 1922, in which the plaintiff wrote to the defendant claiming a present contract for an unexpired three and one-half years with a right of renewal for five years, and discussing a different basis for carrying on his relations with the defendant.  Defendant answered this letter December 18, 1922, without specifically challenging the statement with regard to a contract having three and one-half years to run.  It is claimed that the correspondence embodied in these two letters, considered in connection with the certain other letters cited, furnishes written evidence of the contract the plaintiff is suing upon.  The cases require that a written agreement must show the entire contract.  (*Drake* v. *Seaman*, 97 N. Y. 230; *Poel* v. *Brunswick-Balke-Collender Co.*, 216 id. 310, 314; *Wright* v. *Weeks*, 25 id. 153, 157; *Mandel* v. *Guardian Holding Co.*, 200 App. Div. 767, 769, 770; *Dawson* v. *Margolies*, 126 Misc. 39, 41.)  Of course, this rule does not prevent an existing situation referred to in the written agreement from being incorporated therein by reference and evidenced by parol.  (*Marks* v. *Cowdin*, 226 N. Y. 138.)  But a previously existing situation which has ended and been followed by another situation cannot be treated as an existing situation.  It is not enough that the written memoranda identify *a* contract.  The written memoranda must be *the* contract.  (*Poel* v. *Brunswick-Balke-Collender Co.*, *supra*; *Drake* v. *Seaman*, *supra*; *Wright* v. *Weeks*, *supra*; *Mandel* v. *Guardian Holding Co.*, *supra*; *Dawson* v. *Margolies*, *supra*.)  The written memoranda in this case, particularly the letter of November 16, 1922, with the reply thereto, is not *the* contract sued upon herein.  It is at best a purported identification of *a* contract.  Even though an inference were to arise from a failure to specifically deny that there was an admission that *a* contract existed, such inferential admission is not effective to constitute a written memorandum as required by statute to be signed by the party charged therewith, of the contract sued upon herein.  The inference, or the writing from which the inference is drawn, cannot nullify the statute, and neither the inference nor the writing from which it is drawn evidences the terms

33

of the contract sued on herein in the form required by the statute. (Pers. Prop. Law, § 31.) Such an inference if drawn would not be conclusive. It could only be given effect if the rest of plaintiff's correspondence did not destroy or extinguish the inference. This is what that other correspondence does. I need note but one difference regarding a missing important element or term. The plaintiff asserts — concedes — that the contract he invokes permitted the defendant to discontinue doing United States business and terminate the contract if the business was not profitable. That term is not in writing in any paper subsequent to August 1, 1918. This shows the contract sued on is not the one claimed to have been subsequently incorporated in correspondence. On the contrary, the elements of the alleged originally oral contract put in writing are at best a doubtful admission of elements of *a* contract, but not *the* contract sued on and relied upon in the evidence of this case. Plaintiff testified: " Mr. Perez and I have come to an agreement * * * that will return to the same as the old contract, the same time *and everything*," referring to the 1914 agreement containing the above term, which is noted as missing from the alleged subsequent written memoranda of the alleged oral contract. This " old basis " (exhibit 19, July 5, 1921) was not an existing basis as of August 1, 1918, which could be evidenced orally (*Marks* v. *Cowdin, supra*), but one which had been superseded as a basis (exhibit 5, August 1, 1918). A fair reading of the correspondence between these parties in 1921, 1922 and 1923 shows that there was no recognition between them of the existence of a long term agreement. This is particularly so from an examination of plaintiff's letters of June 17, 1921, June 27, 1921, and July 5, 1921, and defendant's letters to plaintiff of June 11, 1921, June 23, 1921, and July 1, 1921. During that period the question was up between the parties as to what the basis of their dealings with each other was to be after the terminating of the August 1, 1918, paper agreement. Nothing in these letters indicates the then existence of an agreement between the parties to run for five years upon a commission basis. The language of both parties is indicative of there being no existing arrangement between the parties immediately following the termination of the August 1, 1918, paper agreement other than the hiring at will set out in the correspondence referred to. That correspondence constitutes a negotiating back and forth to the end that an agreement be reached, and the basis of agreement reached was a mere hiring at will. The first time an assertion is made of the existence of a long term agreement is very shortly before the defendant notified the plaintiff of its exercise of its rights to terminate the agreement at will. Before that assertion the plaintiff had committed himself

in writing in such a fashion as to preclude the acceptance by this court of his present assertion of the existence of this five-year agreement that he now sues upon. The basis for this conclusion can only be understood by a reading of all the correspondence in the light of the relations of the parties to each other *at the time each letter was written.* Any different conclusion would not be permitted by a court to be indulged in by a jury. This conclusion may seem harsh to the plaintiff, but this is because his correspondence and written arrangement with the defendant preclude the acceptance of the claim he now advances. If the claim he now advances were the true basis of the arrangement between the parties, he should have set it out more aptly in writing and have refrained from setting out matter in writing which negatives his present claim. The defendant had a right to avail itself of its legal rights in terminating the hiring at will, which seems to be the character of the relations between the parties after the termination of the agreement shown in the August 1, 1918, paper.

I am constrained, therefore, to direct a verdict for the defendant on the first cause of action. As to the second cause of action, a verdict must be directed for the plaintiff. The only question is as to the amount. I accept the plaintiff's theory and figures with respect to that cause of action and direct a verdict in the sum of $371.19, with interest of $59.36, being a total of $430.55. The plaintiff has an exception to the directing of a verdict for the defendant on the first cause of action and defendant has an exception to the direction of a verdict for the plaintiff on the second cause of action for $430.55. Enter judgment accordingly. Thirty days' stay and sixty days to make a case.