Breitel, J.
At issue is the ownership of the proceeds of a joint account in the New York office of a Swiss bank. The account had been opened by a married couple domiciled in France. Both have died, the husband first, and the surviving wife after litigation over the ownership of the account had begun. Substantially, the ownership turns on the conflict between the rights of survivorship of joint owners of a bank account under New York law and the rights of devolution under the forced heirship rules mandated by the civil law of France. Actions were instituted both in New York and France. The French litigation went to judgment first, and the result hinges on the principles of res judicata to be applied to the prior French judgment.
After a nonjury trial judgment was rendered in favor of the plaintiffs and appellants holding that the prior French judgment did not control, and recovery was awarded to the estate of the deceased widow under applicable principles of substantive New York law. The Appellate .Division modified the judgment, accorded res judicata recognition to the prior French judgment and, in effect, awarded recovery to the heir of the deceased husband under the forced heirship rules of France.
The Appellate Division was correct in according such recognition to the French judgment and its order should be affirmed. There are two issues which require discussion. First, what consequence shall ensue at this stage in the litigation, as a result of the failure of both the parties and the courts below to have raised or considered the equivalent principle of res judicata in determining the effect of a French judgment in France. The second issue is whether the parties in the New York action had been the same or in privity with the parties in the French litigation. Although the second issue was discussed at the Appellate Division it would appear to be useful to elaborate somewhat beyond its analysis.
Aristide Lanari, an Italian citizen, and his second wife, Roberta, an American citizen, both domiciled in France, opened *274 in a New York City office of the Swiss hank a purportedly joint bank account with right of survivorship. The documents dated in November, 1960 and .signed by Aristide and Roberta provided that inter se they occupied the status of “ true ” joint tenants, and, further, that the account should be governed by the laws of the State of New York (see Wyatt v. Fulrath, 16 N Y 2d 169).
Upon Aristide’s death in September, 1961, the widow requested the bank to turn over the balance of the account to her as surviving joint tenant. Before the bank could comply, it received notice from Mrs. Maria Elena Meyer, the decedent’s only child, a daughter by his first wife, that she claimed the fund.
Before any action was taken in New York, the daughter sought a declaratory judgment against the widow in an appropriate French court that the funds in New York were part of Aristide’s estate and that the widow had no rights to them. Under the forced heirship law of France, it was not possible for Aristide to donate to his wife more than one fourth of his assets. Any attempted transfer in violation of this statute is void in its entirety upon the challenge of a child of a first marriage (33 A D 2d 102, 103). One month later, on April 5, 1962, the widow instituted this action in New York against the bank to compel a turnover of the funds. The daughter and an ancillary administrator of Aristide Lanari’s estate were interpleaded by the bank. Shortly after the appearances in both actions, the widow died, leaving as legatees three sisters to whom she bequeathed her entire estate, except for two legacies to others of $10,000 each. In the French action the sisters were substituted as defendants and continued its defense. The French action proceeded to a determination in favor of the daughter. In the New York action the executors of the widow’s estate were substituted as plaintiffs. The widow’s executors are respectively husbands of two of her legatee sisters.
Plaintiffs and appellants, the executors of the widow, argue that they should not be precluded by the French judgment. They contend that there was no substantial identity of parties or issues in the two actions, and, assuming arguendo that there was an identity of parties and issues, public policy forbids recognition of the foreign judgment.
*275 Preliminarily, the law of the rendering jurisdiction, insofar as it limits the effect of its own judgments, would also limit elsewhere the preclusive effect of the judgment and the definition of the parties bound. At least this is true as to recognition of judgments between States of the Union (Langerman v. Langerman, 303 N. Y. 465, 473-474; Restatement, 2d, Conflict of Laws [Proposed Official Draft, Part I, May 2, 1967], § 94, Comment c; Ehrenzweig, Conflict of Laws, § 66). A fortiori, the limitation should apply to extranational judgments (Schoenbrod v. Siegler, 20 N Y 2d 403, 409; cf. Ehrenzweig, op. cit., supra, § 67; Restatement, 2d, Conflict of Laws [Proposed Official Draft, Part I, May 2, 1967], § 98, Comment f; Smit, International Res Judicata and Collateral Estoppel in the United States, 9 U. C. L. A. L. Rev. 44, 62-63; von Mehren and Trautman, Recognition of Foreign Adjudications: A Survey and a Suggested Approach, 81 Harv. L. Rev. 1601, 1677-1678). The burden of proof in establishing the conclusive effect in the rendering jurisdiction of a prior judgment is upon the party asserting it (Marine Tr. Corp. v. Switzerland Gen. Ins. Co., 263 N. Y. 139, 147; Jasper v. Rozinski, 228 N. Y. 349, 356; Townsley v. Niagara Life Ins. Co., 218 N. Y. 228, 233). Notably absent from the briefs and opinions below is a discussion of the scope of preclusion under French law.
The record and briefs demonstrate that all parties assumed, or better yet, seemed to have agreed, that the preclusive effect of the French judgment in France under its law was no problem — res judicata effect and finality in France would be the same as in New York. Indeed, the issue is never raised or discussed anywhere. Cursory independent research suggests that the parties’ attitude is based on a probably accurate understanding of French law as applied to this situation (see C. Civ., art. 1351 [Wright tr., 1908]; 2-[part I] Planiol, Treatise on the Civil Law [La. Law Inst. tr.], No. 54A, par. [4]; Herzog, Civil Procedure in France, §§ 13.01-13.03). If the assumption were not correct (or perhaps, if the parties were not held to the theory on which the action was litigated) there might be a troublesome issue to surmount, but probably with the same end result (see Ehrenzweig, Private International Law, pp. 179-180; but see Ninth Annual Report of N. Y. Judicial Council, *276 1943, pp. 279-280. See, generally, Ehag Eisenbahnwerte Holding AG. v. Banca Nat. a. Romaniei, 306 N. Y. 242, 249; International Text Book Co. v. Connelly, 206 N. Y. 188, 200-201).
"While, generally, courts will not infer a similarity of law between civil-law and common-law jurisdictions, there are significant exceptions (e.g., Arams v. Arams, 182 Misc. 328, 335 [Walter, J.]; Cuba R. R. Co. v. Crosby, 222 U. S. 473, 478). More important, in the absence of a manifest injustice, the court will allow the parties by default in pleading or proof to agree or acquiesce that forum law be applied (Savage v. O’Neil, 44 N. Y. 298, 301; Monroe v. Douglass, 5 N. Y. 447, 452; Pioneer Credit Corp. v. Carden, 127 Vt. 229; Leary v. Gledhill, 8 N. J. 260 [per Vanderbilt, Ch. J.]; Columbia Nastri & Carta Carbone v. Columbia R. & C. Mfg. Co., 367 F. 2d 308, 311, n. 1 and accompanying text [Lumbard, Ch. J.]. See, Currie, On the Displacement of the Law of the Forum, 58 Col. L. Rev. 964, 1001-1004; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 4511.06; but cf. Walton v. Arabian Amer. Oil Co., 233 F. 2d 541, cert. den. 352 U. S. 872; Philp v. Macri, 261 F. 2d 945). This was the rule without question at one time, as the Savage and Monroe cases (supra) make manifestly clear. Currie in his exhaustive discussion, cited immediately above, so viewed it, but also assumed, as did the court in the Walton case (supra) that somehow the principle had fallen into desuetude because of an extreme application of the lex loci. However that may be, under modern principles, in the absence of a manifest injustice, a total failure to raise or prove foreign law should not inevitably prevent the application of forum law. In theory and effect the parties have consented that the forum law be applied to the controversy. On this view, the French judgment is accepted as having in France the same res judicata effect as a New York judgment would have in New York. As already observed, this is probably correct in fact for the purposes of this litigation.
The statements last made do not of course preclude a court of this State from taking judicial notice of foreign law on the initiative of a litigant or sua sponte. That is now made clear by statute (CPLR 4511, subd. [b]). It need not now be determined whether a court’s failure sua sponte to notice foreign law, if a manifest injustice would result from such failure, would constitute an abuse of discretion as a matter of law.
*277 Generally speaking, the doctrine of res judicata gives ‘ ‘ binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein ” (Matter of Shea, 309 N. Y. 605, 616). It has been said that the term privity does not have a technical and well-defined meaning. It denominates a rule, however, to the effect that under the circumstances, and for the purposes of the case at hand, a person may be bound by a prior judgment to which he was not a party of record (Restatement, Judgments, § 83, Comment a). It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action (Restatement, Judgments, §§ 81-90).
Authorities are in accord that a person may so involve himself with litigation in which he is interested that the result is res judicata against him (1 Freeman, Judgments [5th ed.], §§ 430, 432-433; Restatement, Judgments, § 84; 5 Weinstein-Korn-Miller, op. cit., supra, ¶ 5011.33:7 Carmody-Wait, N. Y. Prac., § 223, p. 496; Ann.: Res Judicata-Participation in Suit, 139 A. L. R. 9). The character and extent of the participation in litigation which will in legal effect make one a party is most often an issue of fact. As a consequence, no single fact is determinative but all the circumstances must be considered from which one may infer whether or not there was participation amounting to a sharing in control of the litigation (see, e.g., Matter of National Sur. Co., 286 N. Y. 216, 222-223; Fish v. Vanderlip, 218 N. Y. 29, 35-36; Peare v. Griggs, 7 A D 2d 303, 305; Willsey v. Strawway, 44 Misc 2d 601, 605, affd. 22 A D 2d 973; Matter of McCauley, 49 Misc. 209, 212).
The record justifies the conclusion that the relationship of Sewell Watts, one of the executors of the widow and husband of her sister, with Coudert Brothers, the law firm representing the widow and her substituted sisters, was such that he had practical control of all proceedings. Watts was responsible for retaining Coudert Brothers to represent the widow in the French action. Contact that the involved members of the family had with Coudert Brothers was through Watts. Watts testified before trial that “ [e]verybody sends everything to *278 me and I send everything to Coudert Bros. ’ ’ After the widow’s death a multiple power of attorney was executed by both executors, in their representative capacities, and the sisters of Roberta, authorizing Coudert Brothers to "continue all actions or proceedings commenced by [Roberta and] to commence proceedings or procedural acts for effecting the execution or collection of all rights of the said Roberta Maccoun Lanari ”. It is of no little importance in appraising the relationship between Watts and Coudert Brothers, that he signed the power several days before the others. Coudert Brothers thereafter retained counsel to appear in the French action in behalf of the parties of record, the three sisters.
It is of singular significance that the two actions were prosecuted simultaneously by the same law firm. This alone supports a strong probability that the executors, who concededly controlled the New York action, were inextricably involved in the progress of the foreign action. It is difficult to conceive that the managers of the New York action would not see to it, if it were in their power (as it was), that the French defense was managed as they thought it should be.
The undisputed facts of the relationship between Coudert Brothers and Watts, as well ás the reliance placed on Watts by other members of the family, suggests, if it does not compel, the conclusion that Watts exercised practical control of the French proceeding on behalf of the estate as well as the sisters. Such control should and does conclude the executors from relitigating the issue of the ownership of the funds. Consequently, the Appellate Division findings rather than those of the trial court should be affirmed (Cohen and Karger, Powers of the New York Court of Appeals, §§ 112, 113).
The argument that there was no identity of issues before the two courts is unsubstantiated. The Appellate Division finding of identity is supported by a comparison of the pleadings in the two actions (compare Appendix, pp. A255, A261, with A30, A32). The determination of the interests of the respective parties to the assets in the joint account was common to both actions.
In the alternative, plaintiffs argue that recognition of the French judgment should be refused on the ground that such recognition is repugnant to the public policy of New York. *279 Under principles of comity the courts should give full effect to a judgment rendered by a French court of competent jurisdiction (Johnston v. Compagnie Generate Transatlantique, 242 N. Y. 381, 387; Restatement, 2d, Conflict of Laws, [Proposed Official Draft, Part I, May 2, 1967], § 98; cf. Gould v. Gould, 235 N. Y. 14, esp. at p. 29). Recognition will not be withheld merely because the choice of law process in the rendering jurisdiction applies a law at variance with that which would be applied under New York choice of law principles (International Firearms Co. v. Kingston Trust Co., 6 N Y 2d 406, 411). It is concluded that no contravention of public policy sufficient to justify nonrecognition has been demonstrated by appellants.*
Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties filing briefs payable from the estate.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
Order affirmed, with costs to all parties appearing separately and filing separate briefs payable out of estate.

 Of course, if the sisters were not barred from relitigating the issue they could rely, as they do, on cases like Wyatt v. Fulrath (16 N Y 2d 169, supra) and Hutchison v. Ross (262 N. Y. 381) which allow the application of New York law to assets in this State, otherwise subject,to the forced heirship rules of a civil law jurisdiction. In that event the daughter would rely on Matter of Crichton (20 N Y 2d 124) and Matter of Clark (21 N Y 2d 478). On the view taken, the issue may not be reached.