**John P. LOEBIG, Appellant,**

v.

**George H. LARUCCI, Appellee.**

**No. 594, Docket 77–7221.**

United States Court of Appeals,
Second Circuit.

Submitted Jan. 20, 1978.

Decided March 7, 1978.

George E. Loebig, Jr., Pittsburgh, Pa., for appellant.

Ainsworth, Sullivan, Tracy & Knauf, Albany, N. Y., for appellee.

Before MOORE, SMITH and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

This diversity action arose from a traffic accident in Nuremberg, Germany. The jury found in favor of defendant Larucci, and plaintiff Loebig's complaint was dismissed on April 7, 1977. From the judgment entered upon the verdict of no cause for action, plaintiff appeals. The only question presented concerns the specificity of the jury charge—whether the district court erred in refusing specifically to charge the substance of the New York Vehicle and Traffic Law regarding the standard of care to be used when entering intersections. Appellant contends that the court erred by failing to read either the applicable statute or the suggested charge based on the statute, which provided that a driver should drive at an appropriate reduced speed when approaching an intersection.

## I.

On April 26, 1971, in the City of Nuremberg, Germany, Loebig was the passenger on a Honda motorcycle owned and operated by Larucci. Larucci was a resident of Schenevus, New York, and at the time was stationed in Germany as a member of the United States Army. Loebig was a resident of Pittsburgh, Pennsylvania, and was an American civilian having been discharged from the military service in April, 1970. Since the complaint alleged an amount in controversy in excess of $10,000, this is a case of diversity jurisdiction under 28 U.S.C. § 1332.

At the time of the accident, about 5:55 P. M., Larucci was driving his motorcycle in an easterly direction on Bayern Street, a four-lane road with a median strip. As he approached the intersection, the traffic signal

in the east-west direction was green, and his speed was "thirty or thirty-five miles an hour." [1] (8a, 26a). The street in Larucci's direction of travel contained heavy traffic. As he approached the intersection without reducing his speed, Larucci noticed a car, operated by Robert Morrison, stopped at the intersection facing west. When Larucci's motorcycle was only about 15 feet from Morrison's car, Morrison pulled out abruptly, attempting to turn left toward the south. The two vehicles collided, and both riders of the motorcycle were hurled through the air. Loebig sustained serious injuries to his head and body, which served as the basis for this suit. Morrison admitted not seeing the motorcycle and was issued a citation for failure to yield the right of way.

## II.

At the close of the evidence, both parties made requests to charge which included recital of specific sections of the New York traffic law, N.Y.Veh. & Traf.Law (McKinney) § 1 et seq. The appellee requested charges concerning § 1141 (vehicle turning left), § 1162 (starting parked vehicle), and § 1190 (reckless driving). (106a). The appellant requested a charge concerning § 1180(a), (e) (appropriate speed entering intersection).[2]

In the discussions of the charge among the attorneys and the court, the court said,

"I did read your requests, and I think that you are both agreed that we are going to instruct the jury upon the New York State Law regarding negligence, and contributory negligence, and I don't know about all of these other statutes. You have a lot of statutes here." (54a).

1. The speed limit was thirty-one or thirty-seven miles per hour, depending on interpretation of the military police report (Defendant's Exhibit A reprinted at 101a). 49a–50a.

2. Sections 1180(a) and (e) read as follows:
   (a) No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.
   \*    \*    \*    \*    \*    \*

(e) The driver of every vehicle shall, consistent with the requirements of subdivision (a) of this section, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when any special hazard exists with respect to pedestrians, or other traffic by reason of weather or highway conditions.

**84**

Although appellee's attorney agreed to stipulate to withdraw his request concerning the statutes, appellant's attorney refused to stipulate to "throw out" his charge request relating to § 1180(a), (e). The court noted:

"... I will refuse number one of the Plaintiff, and take all of the statute out because to me it just doesn't make sense to give New York statutory law by reading the law, or by some interpretation concerning an accident that happened over in Germany." (57a–58a).[3]

The judge then made a general charge concerning the proper standard of care to be used in the operation of a motor vehicle. This charge included consideration of the speed of the appellee's vehicle. The court charged:

"Consider all of the circumstances that were described by Mr. Larucci, and the time of day, and the visibility, and the speed he maintained, and the traffic conditions and the observations that he had of the intersection as he came into it.

\* \* \* \* \* \*

"Each of them [Morrison and Larucci] was under a duty to maintain a reasonable safe rate of speed, and to have his automobile or motorcycle under reasonable control, and keep a proper lookout under the circumstances then existing, and to see if he was aware of what was in his view, and use reasonable care to avoid an accident." (78a, 84a).

### III.

■ In determining the propriety of the charge, the applicable substantive law

must be determined. This court is bound by the choice of law rules of the forum state, New York. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Rosenthal v. Warren*, 475 F.2d 438, 440 (2d Cir. 1973). In determining the choice of law, New York follows the approach of "giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963). *See Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969); *Gordon v. Eastern Air Lines Inc.*, 391 F.Supp. 31 (S.D.N.Y.1975); Restatement, Second, Conflicts of Law § 145. Here the question is the appellee's exercise of due care in the operation of a motorcycle. As such, New York courts would apply the law of the situs.

"Where the defendant's exercise of due care in the operation of his automobile is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place." *Babcock, supra*, 12 N.Y.2d at 483, 240 N.Y.S.2d at 750, 191 N.E.2d at 284.

*See* Restatement, Second, Conflicts of Laws § 157.[4] Thus, in this case, German law is

---

**3.** In response to the judge's comments, appellant's lawyer somewhat cryptically answered, "That is fine, Your Honor". (58a). This could be interpreted as the lawyer failing to take exception to the charge. The next day, after the charge was given to the jury, appellant's lawyer had "[n]o objections" and "[n]o further requests" to charge. (87a). However, before beginning court on the day of the charge, counsel met in chambers with the judge. The judge, in refusing certain of appellee's requests for charge, stated to appellee's lawyer, "[A]nything that I refuse here now, you have an exception to automatically, if it becomes a question on appeal." (65a). Since appellant's

lawyer may well have believed that the statement was also addressed to him, for purposes of this appeal we assume that exceptions were properly taken by the appellant.

**4.** Section 157 of the Restatement, Second, Conflicts of Laws states:

"(1) The law selected by application of the rule of § 145 determines the standard of care by which the actor's conduct shall be judged. (2) The applicable law will usually be the local law of the state where the injury occurred."

Comment c to § 157 provides that the "forum will apply any precise standard of care that is

the applicable law for determining the proper standard of care for the appellee.

Rule 44.1 of the Federal Rules of Civil Procedure permits parties to present information on foreign law, and the court may make its own determination of foreign law based on its own research, but it is not mandatory that it do so. In the district court appellant did present a brief in which he conceded that German law is applicable as to the standard of care. Appellant further argued that German law is the same as New York law in this regard. The brief stated:

"Section 276 of the [German] Civil Code defines negligence as the failure to use the care requisite in one's dealings with others. The standard is 'that degree of care which is considered proper in the circumstances by ordinary prudent persons.' E. Ryan, *An Introduction to the Civil Law* 113 (1962)." Brief on Behalf of Plaintiff at 4.

Appellant continued in describing that standard of care:

"Relevant to this case are the developed rules that 'the driver of a motor vehicle must maintain a speed low enough to avert accidents and traffic disturbances.' A. vonMehren, [*The Civil Law System* (1947)] at 443. . . ." *Id.* at 5.

In conclusion the appellant submitted "that the above stated standard of care and applicable doctrines should be applied in this case." *Id.* If this is deemed to be an offer of proof of applicable law, then the charge to the jury was a fair description of German law as proved by the appellant.

■ Assuming that this was not a complete offer of proof as to German law, the problem remains—determining the proper law to apply. In cases involving the law of common law countries, New York courts generally assume that the foreign law is the same as New York law. "If the contract were made or the tort committed in a state or country the foundation of whose jurisprudence is known to be the common law the presumption is indulged that the common law still prevails there and that it is the same as the common law of New York . . . ." *Arams v. Arams*, 182 Misc. 328, 45 N.Y.S.2d 251, 254 (Sup.Ct.N.Y.Co.1943). Such a presumption generally is not indulged with respect to a civil law country; New York courts have not presumed the law of a civil law country to be the same as New York law. *Riley v. Pierce Oil Corp.*, 245 N.Y. 152, 156 N.E. 647 (1927); *Bril v. Suomen Pankki Finlands Bank*, 199 Misc. 11, 97 N.Y.S.2d 22, 37 (Sup.Ct.Erie Co.1950); *Savage v. O'Neil*, 44 N.Y. 298, 300 (1871).[5]

■ When there is no presumption that New York law is the same as foreign law and no evidence has been presented as to foreign law, New York courts have decided the cases in accordance with New York law. *Savage, supra; Bril, supra; Arams, supra; Smith v. Compania Litografica de La Habana*, 127 Misc. 508, 512, 217 N.Y.S. 39 (Sup.Ct.Kings Co.1926).[6] In

prescribed by the applicable law in determining whether or not the actor was negligent. Such a precise standard of care may be established by a statute or ordinance". No mention was made here of specific applicable German traffic statutes.

**5.** In at least one case, a New York court has presumed that the law was the same. *Revillon v. Demme*, 114 Misc. 1, 185 N.Y.S. 443 (Sup.Ct.Kings Co.1920).

**6.** This practice has not been universally followed in New York. In *Riley v. Pierce Oil Corp.*, 245 N.Y. 152, 156 N.E. 647 (1927), the complaint was dismissed, in an action for conversion of oil extracted from the ground, because the plaintiff did not show the law of Mexico where the conversion allegedly occurred. That case was similar to *Cuba Rail-*

*road Co. v. Crosby*, 222 U.S. 473, 32 S.Ct. 132, 56 L.Ed. 274 (1912) where an employee suing his employer for injuries sustained in Cuba could not recover without proving that the law of Cuba imposed liability upon the employer. Like *Cuba Railroad, Riley* dealt with a refinement in the law—the case depended upon Mexico's conception of the nature of oil rights. The case at bar is, on the other hand, in the class of "rudimentary contracts or torts made or committed abroad . . . [where] courts would assume a liability to exist if nothing to the contrary appeared" because "[s]uch matters are likely to impose an obligation in all civilized countries." 222 U.S. at 478, 32 S.Ct. at 132. The question here is not whether Germany would apply negligence law, but what standard of care is encompassed by negligence law.

*Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970), Judge (now Chief Judge) Breitel stated that "under modern principles, in the absence of manifest injustice, a total failure to raise or prove foreign law should not inevitably prevent the application of forum law". *Id.* at 276, 317 N.Y.S.2d at 320, 265 N.E.2d at 743. The court found that "court[s] will allow the parties by default in pleading of proof to agree or acquiesce that forum law is applied". (Citations omitted.) *Id.* In the case at bar the parties at least acquiesced in the application of New York law by their failure to prove German law and their requests to charge based on New York law.

■ In following New York law, certainly New York courts would assume that the general negligence standard of care would be applicable. It is unlikely, however, in a case arising out of an accident in Germany, that the courts would add the statutory refinements to the standard of care to include the apparent slight extra duty of care in approaching intersections. Although New York law may be applicable in the absence of proof of German law, strict statutory refinements in New York law should not be held binding as the standard of care for operation of a vehicle in Germany.

■ In addition, the appellant failed to prove any statutory necessity in Germany for drivers to reduce their speed as they approach intersections. Appellant also presented a brief indicating that the general negligence law of Germany was the same as that of New York. These two facts are sufficient to hold the appellant to have consented to the application of only so much of the New York law, regarding the standard of care, as the district court considered was consistent with German law.

■ Finally, although the district court did not charge specifically § 1180(a), (e), the court included the thrust of that section in its charge. By its terms, § 1180(e) refers to "an appropriate reduced speed". It does not indicate the quantum of reduction or that reduction in speed is always necessary when entering an intersection. The judge fully covered this ground when he charged the jury that each driver must "maintain a reasonable safe rate of speed". (84a). The charge adequately reflected the applicable New York state law in this factual situation, and brought the factor of appropriate speed to the attention of the jury. In light of the charge, the jury did not unreasonably determine that the appellee was not negligent in the operation of his motorcycle.

Affirmed.